STOULIG, Judge.
This appeal involves a workmen’s compensation claim and provides for consideration the following issues: (1) did the trial court err in finding that the plaintiff was “disfigured” within the meaning of the workmen’s compensation statute and in applying R.S. 23:1221(4)(p); and (2) were the defendants arbitrary in stopping compensation payments when plaintiff was released for “light duty” work by the company doctor?
It is undisputed that on November 8, 1977, plaintiff, Glenn Jones, suffered a laceration of his right eye caused by a flying fragment of cement while in the course and scope of his employment as a common laborer with the defendant, Brown & Root Inc. Immediately after the accident plaintiff was taken to the hospital and placed under the care of the company’s ophthalmologist, Dr. Martha Lea. His eye was sutured and plaintiff was hospitalized for a period of eight days. Two days later Dr. Lea stated plaintiff could return to “light duty” work of sitting around. Plaintiff disputed his ability to return to work, maintaining his eye was still paining him and he was unable to drive. At this point in time he was still wearing an eye patch over the injured member.
The following month plaintiff consulted Dr. Earl L. Nelson, ophthalmologist who found Jones suffering from photophobia (sensitivity and pain to light). He removed a non-absorbable suture from plaintiff’s eye. In the opinion of this expert plaintiff was not able to return to work until January 20, 1978.
Dr. Lea rated plaintiff’s disability of the right eye as approximately 15% loss of cen *874 tral vision; whereas Dr. Nelson assessed the impairment at 15 to 25%. Both experts agreed that eyeglasses would correct the deficiency in plaintiff’s vision.
Although the trial judge found as a matter of fact that plaintiff suffered a 15 to 20% loss of his normal sight, he concluded that “glasses are a cosmetic defect, more akin to serious disfigurement of the face and head rather than the loss of use of function of the eye”. He reasoned that plaintiff did not suffer the partial loss of the use of his eye because his sight deficiency could be corrected with glasses, but since the accident will cause plaintiff to wear glasses the remainder of his life, which is “akin to serious disfigurement”, he awarded compensation under § 1221(4)(p).
We find no authority, statutory or jurisprudential, either in support of or against the position that the wearing of glasses per se is a serious disfigurement within the contemplation of § 1221(4)(p) of the compensation statute. The result we reach in this matter does not require us to pass upon this issue.
Plaintiff in support of the trial court’s judgment relies upon the case, Curry v. Vanantwerpen, 378 So.2d 793 (La.App.3d Cir. 1973).[1] In opposition to the judgment, defendants cite LaFleur v. Seaboard Fire and Marine Insurance Co., 296 So.2d 860 (La.App.3d Cir. 1974), writ refused 300 So.2d 185 (La.1974).
The facts in each of these cases are strikingly similar. In each instance the employee suffered a 20% loss of vision which was corrected or alleviated in Curry by the use of eyedrops and in LaFleur by the use of eyeglasses. LaFleur awarded compensation under § 1221(4)(i), (o)[2] because it specified the benefits for the loss of the member involved; whereas, Curry awarded the benefits under § 1221(4)(p)[3] because the loss was permanent.
Obviously in Curry the court overlooked the qualifying statement at the beginning of § 1221(4)(p) which reads: “in cases not falling within any of the provisions already made . .” and was guided by the language “. . the physical function is seriously permanently impaired . . .”
We hold that LaFleur is the correct method of determining compensation benefits for a loss involving the eye. Where the statute provides a specific schedule of compensation for the loss, or partial loss, of use or function of a member, it shall control and shall prevail over the general savings section of the statute covering those injuries to unlisted members. The partial permanent loss of the use or function of the eye falls within the specific provisions of the statute and as a result the provisions of § 1221(4)(p) are rendered inoperative.
*875 Plaintiff sustained a permanent 25%[4] loss of use or function of the eye and his right to compensation must be computed under § 1221(4Xi), (o). Twenty-five percent of sixty-six and two-thirds percent of plaintiff’s weekly wage of $190 amounts to $31.50 per week, which is less than the weekly minimum of $39 provided in the Act. Therefore, plaintiff is entitled to the minimum of $39 per week for 100 weeks.
The remaining issue is did the trial court err in imposing statutory penalties and attorney’s fees for defendant’s arbitrary failure to pay plaintiff his compensation benefits?
We find it did not. The record reflects that plaintiff received one compensation payment of $126. It is now well settled where the employee’s compensation claim falls within the loss of use or function of a member, the employer is not justified in terminating all benefits until the amounts specified in the schedule under § 1221(4) are fully paid. And when, as in this case, the medical report of the company doctor reflects a partial disability, in order to avoid penalties the employer must tender the benefits due at least to the extent of such partial disability. Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977); Dufrene v. St. Charles Parish Police Jury, 371 So.2d 378 (La.App. 4th Cir. 1979); Burandt v. Slicky’s Pizza Parlor, 377 So.2d 905 (La.App. 4th Cir. 1979). The defendant’s action was properly adjudged by the trial court as being arbitrary and capricious under the law.
The trial court awarded $2,500 as a reasonable attorney’s fee in the instant matter. Though the trial court is vested with great discretion in fixing these fees, we find this award is excessive.
This court said that:
“[I]n estimating the value of the attorney’s services consideration is given to the responsibility incurred, the extent and character of the work performed, the importance of the questions presented, the amount involved, the success attained and the legal knowledge, attainments and skill of counsel.” Sue. of Gilmore, 239 So.2d 462, 464 (La.App. 4th Cir. 1970).
The trial record consisted of the testimony of one witness of twenty-one (21) pages; the deposition of Dr. Lea of twenty-seven (27) pages; and that of Dr. Nelson of twenty-six (26) pages. There is no evidence of any extraordinary services rendered beyond those in a workman’s compensation claim of this nature and the fee awarded should be commensurate with those services. Sue. of Gilmore, supra; Suc. of D’Antoni, 342 So.2d 1281 (La.App. 4th Cir. 1977). $1,500 should adequately compensate plaintiff’s attorney for all time and materials expended herein.
Defendants are also condemned to pay all medical expenses for the treatment of plaintiff’s eye except the charges for legal reports and for appointments which were not kept by the employee.
Accordingly, the judgment of March 26, 1979 is amended and IT IS NOW ORDERED that there be judgment in favor of the plaintiff, Glenn L. Jones, and against the defendants, Brown & Root Inc. and Highland Insurance Company, in solido, in the sum of $39 per week for a period of 100 weeks commencing on November 18, 1977, subject to a credit for compensation payments made, together with all medical expenses incurred because of said injury, with legal interest thereon from the date of delinquency of each weekly payment until paid; and a penalty of 12% on the total amount of unpaid compensation benefits plus attorney’s fees of $1,500. All costs of these proceedings at the trial and appellate levels, including expert witness fees of $150 each to Dr. Martha Lea and Dr. Earl L. Nelson shall be paid by defendants.

AMENDED AND AS AMENDED, AFFIRMED.

. Plaintiff cites several other cases which we find to be factually inapposite since they involve the loss of teeth and therefore § 1221(4)(p) is applicable because such a loss does not fall within any of the specific provisions of the Act.

. “(4) In the following cases, the compensation shall be as follows:
******
(i) For the loss of an eye, sixty-six and two-thirds per centum of wages during one hundred weeks.
******
(o) In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member.”

. “(4) In the following cases, the compensation shall be as follows:

(p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-six and two-thirds per centum of wages during one hundred weeks.”

. Based upon the disability rating of Dr. Earl L. Nelson.