GARRISON, Judge.
This is an appeal from a judgment of the district court denying plaintiffs’ suit for reeission, granting plaintiffs’ action in quanti minoris and awarding diminution of the price in the amount of $5,500.00. Plaintiffs’ actions against various real estate agents and homeowner insurers for fraud and/or misrepresentation were dismissed, as were plaintiffs’ claims for attorney’s fees, costs, relocation, rent and other miscellaneous expenses. From that judgment, plaintiffs appealed; defendants Burns and United States Fidelity and Guarantee Company answered the appeal.
On October 25, 1978, Mr. and Mrs. Henry J. Sauviac purchased No. 3 Spanish Fort Boulevard in New Orleans from Dr. and Mrs. Albert Charles Burns for $75,000.00. Shortly after moving into the house, the Sauviacs discovered rotted studs in the walls, a deteriorated leaking roof, water seepage, and electrical and mechanical problems which resulted in termination of utility service due to unsafe conditions. The Sauviacs moved and have lived in rental apartments since that time.
The trial judge provided the following written reasons for judgment:
“Issues which had to be resolved were: “(1) Were there any defects in this home of sufficient magnitude to warrant the rescission of the sale, plus damages, as requested by the plaintiffs;
“(2) If any such defects did exist, were they ‘hidden’ or were they susceptible to discovery by an ordinary inspection of the premises?
“(3) If some hidden defects did exist, were they of a minor nature and more or less to be expected in a home of this age?
“(4) Is a diminution in price the proper resolution of this dispute, rather than a rescission of the sale?
“The house was approximately 35 years old. It was established to the court’s satisfaction that the plaintiffs were anxious to buy a home in the lakefroiit area in the price range in which this house sold ($75,000.00). The court concluded that the strong desire of the plaintiffs to buy such a home perhaps obstructed their willingness to observe defects or drawbacks prior to purchase. But most importantly, testimony and evidence showed that the plaintiffs themselves caused considerable damage to this home after their purchase, in their attempt to determine whether there were any hidden defects. In fact, the basic usefulness of this home was practically destroyed by the overzealous actions in the way of examination conducted by the plaintiffs after their purchase. The court feels that such damage was totally unnecessary and unwarranted. It would be inequitable to compel the sellers to take back this home which has been so extensively damaged by the buyers in their search for defects.”
After carefully weighing the testimony and evidence and observing all parties involved, the court concluded:
“(1) The sellers had no intention to, nor did they in fact, hide any defects in this home;
“(2) The buyers were most anxious to buy this particular home at the price finally reached;
“(3) All defects existing in this home at the time of the sale were readily observable by simple inspection.
“Of the 28 defects alleged in plaintiffs’ petition, only 2 can be in any way construed as hidden defects. These were the ‘homemade’ electrical work and the possibly deteriorated studs in some walls. All other alleged defects were either unproven or were shown to be readily observable by simple inspection of any ordinary buyer. In addition, there are some minor items which must be corrected to comply with the City Building Code.”
*1366 On appeal, plaintiffs raise the following issues:
1. The trial court’s failure to find that the sellers had knowledge of and omitted to declare the defects;
2. The trial court’s failure to find that the roof condition and water seepage constituted hidden defects;
3. The trial court’s award for reduction failed to adequately compensate the plaintiffs; and
4. Failure to award expert fees, attorney’s fees and additional damages for temporary living expenses.
The trial judge specifically found that the Burns had told the Sauviacs that much of the work done on the house was the amateur effort of Dr. Burns and that the Burnses had provided to the Sauviacs a detailed discussion of the problems with the house. Dr. Burns further testified that he had informed Mr. Sauviac that the low price of the house was due to its defects. Likewise, both Dr. Burns and Mr. Sauviac testified that Burns stated that the water stains were the result of a leak which had been repaired. Burns testified that the seepage was visible because the caulking that he used to keep it under control was visible and that the roof problems were visible because the old water stain was visible. The record contains very little evidence about the degree of visibility of anything. Both attorneys simply asked, in effect, whether or not something were “visible.” Predictably, the Burnses would say “Yes, it was visible” and the Sauviacs would say “No, it wasn’t.”
On appeal the scope of appellate review is whether or not the trial judge was manifestly erroneous in his factual determinations:
“Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973).
Thus, in reviewing the first two specifications of error, we cannot conclude that the trial judge was manifestly erroneous in his factual determinations and credibility calls.
The third specification of error deals with the amount of reduction. Plaintiff seeks to have the reduction increased to $20,877.00, including $3,930.00 for electrical and mechanical defects, $1,200.00 for the roof, and $15,747.00 for the framing. Dahl-man, a general contractor and estimator and witness for the Sauviacs, provided the figures above. In each instance, he estimated making the cheapest type of repair available and reusing materials already in the house. Some of Dahlman’s cited inadequacies, such as the need to finish the paneling in the small bedroom, actually would comprise additionals to the purchased structure. The trial judge further found that most of the “repairs” are necessary solely because of the Sauviac’s overzealous inspections.
On the issue of living expenses, the trial judge found that plaintiffs were forced to move because of the extensive inspections which virtually made the house uninhabitable.
On appeal, the scope of appellate review on the question of quantum is whether or not the amount awarded below constituted a clear abuse of discretion. In the light of the trial judge’s findings that most of the shortcomings were due to damage inflicted by the plaintiffs, we cannot conclude that the amount awarded constituted a “clear” abuse of discretion.
Turning to the question of attorney’s fees, we note that attorney’s fees are provided for under C.C. Art. 2545 when a seller knows of a vice and fails to declare it. In the instant appeal, the vices were declared; hence plaintiffs were not entitled to attorney’s fees.
Expert fees are mandatory under R.S. 13:3666(A):
*1367 “Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.” (emphasis added)
In this case the expert fees “are to be taxed as costs to be paid by the party east in judgment ...” However, both parties were cast in judgment. Accordingly, the trial judge acted properly in denying expert fees.
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.