FORET, Judge.
Mose Atlee (plaintiff) brought this workmen’s compensation action to recover disability benefits, medical and travel expenses, and penalties and attorney’s fees. Named defendants are: Stone & Webster Engineering, Inc. (Stone & Webster), plaintiff’s employer at the time he was involved in a work-related accident; and, Employer’s National Insurance Company (Employer’s National), Stone & Webster’s workmen’s compensation insurer at that time.
The trial court, after trial on the merits, rendered judgment in favor of plaintiff, finding him to be temporarily totally disabled by an inguinal hernia resulting from the work-related accident. The trial court ordered defendants to pay plaintiff past-due disability benefits from September 12, 1980 (the date on which defendants terminated payment of said benefits to plaintiff), through the date on which it rendered judgment (July 1, 1982), at the rate of $148 per week. The trial court rendered judgment in favor of defendants, denying plaintiff’s claim for permanent total disability benefits, or partial disability benefits, and for penalties and attorney’s fees.
Defendants appeal from that judgment and raise the following issues:
(1) Whether the trial court committed manifest error[1] in finding that plaintiff’s inguinal hernia resulted from his work-related accident; and
(2) Whether the trial court committed manifest error in finding that plaintiff was temporarily totally disabled as a result of said hernia.
Plaintiff has answered the appeal and raises the following issues:
(1) Whether the trial court committed manifest error in failing to find plaintiff to be permanently totally disabled, or partially disabled, as a result of injuries to his right hip and right knee, which he sustained in the work-related accident, and
(2) Whether the trial court committed manifest error in failing to award him the statutory penalties and attorney’s fees for defendants’ alleged arbitrary, capricious, and unreasonable actions in terminating the payment of workmen’s compensation benefits to him, and in refusing to reinstate those benefits once they were notified that plaintiff was diagnosed as having suffered an inguinal hernia.
FACTS
Prior to trial on the merits of this action, the parties stipulated that plaintiff was in *571 volved in a work-related accident, and that defendants paid him disability benefits of $148 per week from the date of the accident through September 12, 1980. The parties further stipulated that all of plaintiff’s medical expenses incurred prior to September 12, 1980, had been paid by defendants. Defendants terminated the payment of benefits to plaintiff on that date based on reports received from certain medical experts regarding plaintiff’s physical condition.
PLAINTIFF’S INGUINAL HERNIA
The trial court found that plaintiff was temporarily totally disabled from an inguinal hernia, “... resulting from his on-the-job injury of March 28, 1980, and that the other requirements for compensation under R.S. 23:1121(q) are met.”[2] Defendants contend that this finding is manifestly erroneous. They argue that plaintiff failed to meet his burden of proving a causal relationship between the accident and the development of his hernia.
LSA-R.S. 23:1221(4)(q)(i) and (ii) provide:
“(q)(i) In all claims for inguinal hernia, it must be established by a preponderance of the evidence that the hernia resulted from injury by accident arising out of and in the course and scope of employment; that the accident was reported promptly to the employer, and that the employee was attended by a licensed physician within thirty days thereafter.
(ii) If the employee submits to treatment, including surgery, recommended by a competent physician or surgeon, the employer shall pay compensation benefits as elsewhere fixed by this Chapter.”
Plaintiff was 60 years old when the accident occurred. He testified that he was working in a pit that was approximately 40 to 50 feet deep, when dirt and sand surrounding the pit began to cave in on him from one side.[3] Plaintiff attempted to climb on top of the dirt and sand as it began filling the pit. However, he slipped and was buried up to his waist with his right leg pinned against a concrete pipe. He stated that two of his fellow workers grasped him by the arm and pulled him to safety.
After the accident, plaintiff was administered first aid and then taken to a hospital in St. Francisville, where blood and other fluids were removed from his right knee. Thereafter, he returned to the job site and a written report on the accident was made. Plaintiff then boarded a bus for the ride back to his home in Opelousas. He was given some “papers” to bring to the physician of his choice. However, he arrived in Opelousas late in the evening that day, which was a Friday, and did not see a physician until the following Monday, when he went to the office of Dr. Alan E. Williams, a general practitioner.
Dr. Williams first saw plaintiff on March 31, 1980, and hospitalized him on that date. Plaintiff remained in the hospital until he was discharged on April 5,1980. At the hospital, Dr. Williams testified that plaintiff,
“... received symptomatic treatment consisting of physical therapy and mostly relaxant drugs, pain medicines, and corti-zone preparations.”
His diagnosis of plaintiff’s medical condition was:
“Contusion, excessive contusion from he-matoma to the right thigh, and multiple contusion and abrasions to the knee.”
Dr. Williams had plaintiff evaluated by Dr. Joseph F. Gaar, an orthopedic surgeon, while he was hospitalized.
Plaintiff returned to see Dr. Williams on April 7, 1980, complaining of severe pain and swelling in his right knee. He was again hospitalized and Dr. Gaar was again called in on consultation. Plaintiff was discharged from the hospital on April 14,1980. Thereafter, plaintiff continued to see Dr. *572 Williams on approximately a weekly basis until September 29, 1980, when Dr. Williams discharged plaintiff from his care. Dr. Williams testified that during this period of time plaintiff never complained of any symptoms which would have led him to examine plaintiff for the presence of an inguinal hernia.
Dr. Fred C. Webre, an orthopedic surgeon, saw plaintiff one time on April 20, 1981, at the request of the Social Security Disability Determinations Board. He stated that plaintiff failed to mention anything to him during his examination that might have led him to believe that plaintiff was suffering from a hernia, and he made no examination for such a condition. Dr. Gaar also testified that plaintiff failed to present any complaints to him which would have caused him to examine plaintiff for an inguinal hernia. However, Dr. Gaar admitted that it was possible for plaintiff to have such a hernia without it causing him any pain, i.e., an asymptomatic hernia.
Dr. Charles E. Fontenot, an expert in the field of family practice, first examined plaintiff on February 13, 1981, and diagnosed plaintiff as suffering from an inguinal hernia. Dr. Fontenot stated that plaintiff told him the hernia had been present since the accident. Dr. Fontenot saw plaintiff approximately once a month for the nine months preceding the date of the trial on the merits of this action. During this period of time, the hernia has enlarged and has caused plaintiff’s pain associated therewith to become more severe. Plaintiff is unable to pay for surgery to have the hernia repaired, and has been unable to gain admittance to Charity Hospital in Lafayette to have the surgery performed. Based on the history given him by plaintiff, it was Dr. Fontenot’s opinion that the hernia resulted from the accident. He stated that it can take anywhere from several weeks to several months for a hernia to develop. He further stated that, except for a hernia resulting from a congenital defect, they are almost always caused by some sort of trauma.
Plaintiff testified that he first noticed the hernia in May of 1980, approximately one month after the accident. He stated that it was very small at the time. He had never had such a problem prior to the accident. Dr. Fontenot was the first physician to examine him for the presence of a hernia. Plaintiff’s wife, Eunice B. Atlee, testified that he never related any complaints regarding the hernia to her until after the accident. She never noticed it before the accident, but did so shortly thereafter.
It is our opinion that the trial court’s finding, that plaintiff’s inguinal hernia resulted from his work-related accident and that the requirements for compensation under LSA-R.S. 23:1221(4)(q) have been met, is not clearly wrong.
EXTENT OF PLAINTIFF’S DISABILITY
The trial court found that plaintiff was temporarily totally disabled because of the presence of his inguinal hernia. The trial court further found that said disability ran consecutively with the termination of plaintiff’s disability resulting from the injuries he sustained to his right hip and knee. The trial court stated in its written reasons for judgment that:
“The evidence does not preponderate that plaintiff had a continuing disability from the hip and knee conditions.”
Plaintiff contends that this finding is manifestly erroneous. Plaintiff argues that the evidence clearly indicates that a disability resulting from these conditions exists. He further argues that the trial court should have found him to be permanently totally disabled as a result of these conditions.
Dr. Gaar saw plaintiff eight or nine times for treatment. He saw plaintiff on April 10, 1980, after plaintiff had been hospitalized for the second time because of continuing complaints of severe pain in his right knee. Dr. Gaar testified that plaintiff’s hip motion was normal at that time. He again examined plaintiff on April 25, 1980, and stated that the examination failed to reveal any abnormality in plaintiff’s right hip or right knee. His two subsequent examina *573 tions of plaintiff also revealed no abnormalities.
Dr. Gaar again examined plaintiff on June 23,1980. He testified that the examination was, “... essentially normal in all respects.” He also had plaintiff undergo a Cybex evaluation. This is a machine that measures force, strength, and endurance that a patient has in a certain joint. Dr. Gaar saw plaintiff on September 3, 1980, and discharged him from his care. Dr. Gaar testified that:
“I felt at that time he was able to return to his previous type work and there was no residual functional impairment as a result of his injury five months previous.”
Dr. Gaar noted that he could find no significant arthritis in plaintiff’s right knee. He made this statement after examining x-rays he had taken of the knee on December 2, 1980. These x-rays also revealed no presence of significant arthritis in plaintiff’s right hip.
Dr. Williams was the only other physician besides Dr. Gaar who treated plaintiff on a regular basis following the accident. He saw plaintiff approximately twenty times on a weekly basis between the date of the accident and September 29, 1980, the date on which he discharged plaintiff from his care. He had no disagreement with Dr. Gaar's assessment of plaintiff’s physical condition.
Dr. Williams agreed, that with regard to plaintiff’s knee and hip, that if that had been the only factor to consider then plaintiff would be fine, and that he could have gone back to work in September of 1980.
Dr. Fontenot testified that:
“Well, at the time I examined him on February 13, 1981, he was a sixty-one year old man; he had high blood pressure; he had arthritic changes in his knee and hip; he had a hernia present, so I would have considered him disabled from doing any work at that time, due to those combinations of medical problems.”
Dr. Fontenot further testified that plaintiff could have returned to the type of work he was doing at the time of the accident, if his knee had been his only problem. Finally, Dr. Fontenot stated:
“If he had his hernia fixed and his blood pressure controlled, and in some way could get his arthritic changes under control, you know, he could certainly — I think he could possibly work some more.”
Plaintiff testified that he was still experiencing pain in his right hip and right knee at the time of trial. However, he admitted that, even though Dr. Gaar had told him to return to work in September of 1980, he never attempted to do so. Plaintiff stated that he considered himself to be crippled. He also disputed Dr. Gaar’s testimony that in December of 1980, he was able to do a full squat for the Doctor. He further disputed Dr. Gaar’s testimony and records showing that he had seen Dr. Gaar on at least eight or nine different occasions, insisting that he had only seen Dr. Gaar three times. Plaintiff’s wife testified that he was still experiencing pain in his right hip and right knee. However, she indicated that most of his problems were caused by the presence of the inguinal hernia.
We agree with the trial court’s finding that plaintiff has failed to prove that he is totally and permanently disabled as a result of injuries received in the accident to his right hip and right knee.
PENALTIES AND ATTORNEY’S FEES
Plaintiff contends that the trial court committed manifest error in refusing to award him the statutory penalties and attorney’s fees for defendants’ alleged arbitrary, capricious, and unreasonable actions in terminating the payment of workmen’s compensation benefits to him, and then refusing to reinstate those benefits once they learned that plaintiff had been diagnosed as suffering from an inguinal hernia. A trial court’s conclusion with regard to the assessment of penalties and attorney’s fees under LSA-R.S. 22:658 is partially a factual determination which should not be disturbed absent a finding that it is manifestly in error. Carter v. American Mutual Liability Insurance Company, 386 So.2d 1072 (La. App. 3 Cir.1980); Cullivan v. Fish Engineer *574 ing and Construction Co., Inc., 354 So.2d 597 (La.App. 3 Cir.1977), writ not considered, 355 So.2d 254 (La.1978).
The penalty provisions of LSA-R.S. 22:658 are stricti juris and are imposed in only those instances where the facts show that the insurer’s failure to timely pay insurance benefits is arbitrary, capricious, or without probable cause. Carter v. American Mutual Liability Insurance Company, supra; Guillory v. Travelers Insurance Co., 294 So.2d 215 (La.1974).
Whether or not the discontinuance of workers’ compensation benefits is arbitrary and capricious depends primarily on the facts known to the employer or insurer at the time benefits are terminated. Hughes v. Webster Parish Police Jury, 414 So.2d 1353 (La.App. 2 Cir.1982); Arthur v. McConnell, 286 So.2d 499 (La.App. 2 Cir. 1973).
Stephen Furst testified that he was employed by Employer’s National and that he was the adjuster handling plaintiff’s claim against it. He stated that plaintiff’s benefits were terminated on September 12,1980, on the basis of a report he received from Dr. Gaar on September 3, 1980. Plaintiff, in his brief filed in this Court, concedes that, based on Dr. Gaar’s report, defendants’ initial termination of payment of benefits to him was not arbitrary or capricious.
However, plaintiff contends that a letter sent to defendants on October 29, 1980, containing a report from Dr. Williams, indicated that plaintiff would never be able to return to the type of work he was doing due to the accident and his age. Plaintiff argues that defendants acted in an arbitrary and capricious manner by refusing to reinstate his workmen’s compensation benefits upon receiving Dr. Williams’ report.
Furst testified that, upon receiving Dr. Williams’ report dated October 16, 1980, Employer’s National sent a letter to Dr. Williams requesting that he set forth the basis for the finding contained in his report. A copy of the letter was introduced in evidence. Furst testified that no response was received from Dr. Williams as requested in the letter. Employer’s National then sent a second letter to Dr. Williams on December 15, 1980, again requesting that he state the basis for the conclusion contained in his report. Dr. Williams again failed to respond to defendants’ request for information.
Meanwhile, pursuant to a request by defendants, plaintiff was once again examined by Dr. Gaar on December 2,1980. In a written report made on that same date, Dr. Gaar made the following summary regarding plaintiff’s condition:
“Mr. Atlee has been re-examined in regards to previous injury noted. It is my opinion that there is no significant residual musculoskeletal problem with [sic] would preclude this man from returning to his previous activities prior to his accident. Again, he is released.”
The next time that defendants received any information concerning plaintiff’s physical condition was by letter dated August 21, 1981, from plaintiff’s attorney. That letter contained a handwritten note signed by Dr. Fontenot stating that plaintiff was suffering from an inguinal hernia that was probably caused by the accident. Furst testified that this was the first notification received by defendants that plaintiff was suffering from a hernia. This was approximately one and one-half years post-accident. Defendants then contacted Dr. Gaar requesting that he comment on the existence of plaintiff’s hernia. In a report dated September 16, 1981, Dr. Gaar stated:
“I have reviewed the total chart including my initial evaluation consultation. I see nowhere in these reports any mention of abdominal or groin pain or problems. I am not aware of any complaints to Dr. Williams, his initial treating physician, or any other physicians that he may have seen.”
“The patient was referred back to me in [sic] December 2, 1980, for a re-evaluation. Again, there were no complaints referrable to any type of hernia problem. I found no problems with the extremities at that time, and again, no physical impairment. I have not seen the patient since.”
*575 “It is my personal opinion that there is no relationship to his trauma in March of 1980. I trust that this information is satisfactory.”
Furst testified that he also responded to plaintiff’s attorney’s letter containing the handwritten note from Dr. Fontenot by requesting that Dr. Fontenot supply a written report regarding his findings. Defendants received no response from Dr. Fontenot. Defendants were furnished with a written report sent by Dr. Fontenot to plaintiff’s attorney dated October 6, 1981. That report states in part that:
“During the course of the examination a Right Inguinal Hernia was found. Mr. Atlee stated that his hernia had occurred during the time of his accident. However, his accident was in March of 1980, and he was not examined by myself until February of 1981. It was a period of almost 11 months after his accident. Of course, there is no way for me to know if his hernia did occur at the time of his accident. However, it is possible that the hernia did occur at the time of his accident since he relates the time as such.”
When an insurer’s termination of compensation is based upon competent medical evidence, the action is not arbitrary and capricious. Graziano v. Lallie Kemp Charity Hospital, 400 So.2d 1164 (La.App. 1 Cir.1981); Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977). Further, penalties and attorney’s fees should not be awarded when there are legitimate disputes as to the extent or cause of the claimant’s disability. Hughes v. Webster Parish Police Jury, supra; Perrin v. Hartford Accident & Indemnity Co., 248 So.2d 58 (La.App. 1 Cir.1971); Webb v. Turbex Construction Co., 368 So.2d 789 (La. App. 2 Cir.1979); Weller v. Brown, 398 So.2d 551 (La.App. 1 Cir.1979).
We agree with the trial court’s finding that defendants had not acted arbitrarily, capriciously, or without probable cause in terminating the payment of compensation benefits to plaintiff, or in refusing to reinstate those benefits. Defendants’ decision was based on competent medical evidence, i.e., the reports of plaintiff’s treating orthopedic surgeon, Dr. Gaar. Further, the notification received by defendants some one and one-half years after the accident regarding the existence of plaintiff’s hernia, and Dr. Gaar’s opinion concerning the cause of his hernia, gave rise to a legitimate dispute over whether the hernia was caused by the accident. Thus, the trial court properly denied plaintiff recovery of penalties and attorney’s fees.
DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed.
The costs of this appeal are assessed one-half to the plaintiff-appellee and one-half to the defendant-appellant.
AFFIRMED.

. The rule of appellate review announced in Canter v. Koehring Co., 283 So.2d 716 (La.1973), dictates that we must give great weight to the trial court’s factual conclusions and should not disturb its findings in the absence of manifest error. This test applies to workmen’s compensation cases. Hall v. Houston General Insurance Co., 377 So.2d 561 (La.App. 3 Cir. 1979), writ denied, 379 So.2d 10 (La.1980); Butts v. Insurance Co. of North America, 352 So.2d 745 (La.App. 3 Cir.1977), writ denied, 354 So.2d 206 (La.1978).

. It is obvious that the trial court was referring to LSA-R.S. 23:1221(4)(q), rather than LSA-R.S. 23:1121.

. Apparently, plaintiff was working on Gulf States Utilities’ River Bend Nuclear Power Plant near St. Francisville at the time of the accident.