YELVERTON, Judge.
In this worker’s compensation appeal the issues for determination are
(a) the proper mode of compensation when an employee, who suffered a 25% impairment of his hand, qualified for both a specific loss award under LSA-R.S. 23:1221(4) and a temporary total disability award under LSA-R.S. 23:1221(1), and
(b) whether the trial court erred in failing to award penalties and attorney’s fees.
Albert Arvie sued his employer, Oilfield Construction Company and its worker’s compensation insurer, United General Insurance Company, based on an injury to his right thumb. The accident happened on March 10, 1981, in the course and scope of Arvie’s employment as a general laborer. A board slipped from a stack of lumber onto plaintiff’s hand. He was seen the following day by Dr. Charles Fontenot, a general practitioner, at Ville Platte General Hospital. A right thumb fracture was revealed by X-rays. Dr. Fontenot applied a “thumb spiker” cast on March 11 and removed it on April 12. Plaintiff was discharged from Dr. Fontenot’s care on May 13, 1981. Dr. Fontenot testified by deposition that if Arvie failed to use his hand this could result in permanent stiffness and disability. Plaintiff’s hand continued to bother him so he arranged an appointment with Dr. Fred Mayer, an orthopaedic surgeon.
Dr. Mayer’s deposition indicates that he saw Arvie initially on June 10, 1981, and recommended physical therapy. After four weeks of therapy failed to produce results, the doctor recommended surgery. On July 2, 1981, plaintiff was hospitalized and underwent arthrodesis or fusion of the metacarpal phalangeal joint of the right thumb. A follow-up operation was done on October 5,1981. Dr. Mayer last examined the plaintiff on November 18, 1981. At that time Arvie was doing well with no complaints of *1299 pain although there was still some stiffness. Dr. Mayer described the result as a “solid pain free thumb” that was clinically stable and functional. He estimated the impairment at 50% relative to the thumb or a 25% partial impairment of the entire hand. The doctor felt the plaintiff was capable of returning to his same job in the same capacity.
At trial on May 18, 1982, plaintiff testified that he still had a pain problem when he used the right hand to grip or squeeze. He stated that he had not used his hand much since the accident and had not seen a doctor since November 1981. He started working with his father doing farm work in late April 1982 and was having some problems doing this work, but stated that his arm had become stronger since he started working on the farm.
Compensation benefits were paid for the period from March 12, 1981, to November 25, 1981, at the rate of $163 per week. Payments were terminated based on Dr. Mayer’s discharge report in November of 1981. The insurer paid all of plaintiff’s medical bills.
The trial court determined that the plaintiff had suffered a 25% permanent partial loss of the use of his hand and ordered the defendants to pay compensation benefits for 150 weeks in accordance with the provisions of LSA-R.S. 23:1221(4)(e) and (o), with credit to be given for payments previously made. The trial court rejected the plaintiff’s demand for penalties and attorney’s fees.
Appealing, it is plaintiff’s contention that since he was temporarily totally disabled for 37 weeks (March 12 to November 25, 1981) he should have been awarded 37 weeks temporary total disability at the rate of $163 per week plus the 150 weeks for 25% impairment of the hand which the trial court awarded.[1] We disagree with this contention and affirm the trial court.
LSA-R.S. 23:1221 provides in relevant part:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) For injury producing temporary total disability of an employee to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.

(4) In the following cases, the compensation shall be as follows:
* * * * * *
(e) For the loss of a hand, sixty-six and two-thirds per centum of wages during one hundred fifty weeks.

(o) In all cases involving a permanent partial loss of the use or function of the members mentioned herein-above, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member.
Interpreting these provisions of the statute the Supreme Court in Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982) has recently stated:
The statute does not explicate the relationship between the specific loss schedule and the total and partial disability provisions. In a case in which a specific loss also results in total or partial disability for the worker, the act does not give either remedy priority or state whether the remedies are cumulative or optional. The interaction of judicial opinions and legislative amendments over the lifetime *1300 of the act presents a checkered pattern of interpretations on the question of disability vis a vis schedule loss provisions. W. Malone & H. Johnson, Workers’ Compensation in 13 Louisiana Civil Law Treatise, § 252 (1980), Comment, The Conflict Between the Disability and Specific Injury Clauses of the Louisiana Workmen’s Compensation Act, 11 Tul.L.Rev. 86 (1936).
The prevailing interpretation is that an employee may not recover compensation both for a total or partial disability and for a specific loss but he may recover for one or the other, the employee being permitted recovery under whichever provision affords him greater compensation.3 This rule is a workable one in cases which present a clear-cut choice between remedies affording fixed amounts of compensation. (emphasis added)
In the present case the plaintiff falls within the coverage provisions of both LSA-R.S. 23:1221(1) and 1221(4)(e) and (o). However, he is permitted recovery only under whichever provision affords him greater compensation. The evidence revealed plaintiff was temporarily totally disabled for 37 weeks. Under the provisions of LSA-R.S. 23:1221(1) plaintiff would be entitled to $163 X 37 weeks or $6,031. Under the provisions of LSA-R.S. 23:1221(4)(e) and (o) the trial court determined plaintiff was entitled to $7,350. Since the latter provisions afforded the plaintiff greater compensation benefits the trial court properly awarded plaintiff benefits under the scheduled loss provisions. The trial court also properly determined that the award was subject to a credit of $6,031 previously paid. See LSA-R.S. 23:1223 and Newell v. United States Fidelity & Guaranty Co., 368 So.2d 1158 (La.App. 3rd Cir.1979).
Plaintiff also appealed the denial of attorney’s fees and penalties. The statutory test under both LSA-R.S. 23:1201.2 and R.S. 22:658 is whether the discontinuance is arbitrary, capricious, or without probable cause. Downs v. Rapides General Hospital, 398 So.2d 116 (La.App. 3rd Cir.1981), writ denied, 409 So.2d 611 (La.1981).
In the present case the defendants discontinued the plaintiff’s compensation benefits based on the November 1981 medical report of Dr. Mayer. Dr. Mayer had discharged the plaintiff as able to return to work on November 18, 1981. Considering these circumstances the defendants had a right to rely on Dr. Mayer’s report and were justified in discontinuing the plaintiff’s benefits.[2] See the similar case of Breaux v. Marine Electric and Reliance Insurance Co., 369 So.2d 196 (La.App. 3rd Cir.1979), writ denied 371 So.2d 1344 (La.1979). The trial court was correct in denying attorney’s fees and penalties.
For the reasons assigned the judgment of the district court is affirmed at appellant’s costs.
AFFIRMED.

. In the alternative plaintiff is seeking 37 weeks temporary total disability benefits plus 113 weeks of benefits under the scheduled loss provisions.

. We do not consider defendants’ failure to pay the greater compensation based on the partial loss of a hand under LSA-R.S. 23:1221(4)(e) as arbitrary, capricious, or without probable cause since the trial court could have found LSA-R.S. 23:1221(4)(a) (the loss of a thumb) applicable which would have resulted in lesser benefits than were paid the plaintiff under R.S. 23:1221(1).