LANIER, Judge.
This is a suit by an employee, David Keith Bordelon, against his employer, Vulcan Materials Company (Vulcan), for workmen’s compensation benefits, medical expenses and statutory penalties alleging that the employee sustained a permanent partial loss of the use or function of both eyes in a job related accident. The district court rendered a judgment in favor of the employee for compensation benefits of $44 per week for 100 weeks, less a credit for 32 weeks of scheduled loss of use benefits and 6-⅜ weeks of temporary total benefits previously paid, and all past and future medical expenses resulting from the accident, less a credit of $2,150.84 previously paid. The claim for statutory penalties was dismissed. From this judgment, the employee devolutively appealed.
FACTS
At trial, the parties stipulated to “Established Facts”, the trial judge accepted the stipulations and quoted these facts in his reasons for judgment, and we adopt these facts as our own as follows:
Prior to and on the day of the accident that is the subject of this law suit, David K. Bordelon was employed by Vulcan Materials Company as a control technician at the facility Vulcan operates in Ascension Parish, Louisiana. His duties included, among others, taking readings on valves and gauges on pumps and boilers.
The accident that is the subject of this law suit occurred on December 14, 1979, at the facility of Vulcan Materials Company located in Ascension Parish, Louisiana.
During normal working hours in the course and scope of his employment with Vulcan Materials Company, David Keith Bordelon made a visual inspection of the flame in the interior of a boiler from the inspection port mounted upon the exteri- or of the boiler. In the process of making this inspection, the glass window of the boiler through which David K. Borde- *171 Ion made his inspection exploded in his face.
The accident was reported to Vulcan Materials Company within several minutes after it happened.
As a result of the accident, David K. Bordelon was off work from December 14, 1979, through January 29, 1980; and on January 30, 1980, he resumed his duties as a control technician with Vulcan Materials Company.
At the time of the accident, the average weekly wage paid in all employment subject to the Louisiana Employment Security Law was Two Hundred Twenty-Two and No/100 ($222.00) Dollars. At the time of the accident, the average weekly wage paid by Vulcan Materials Company to David K. Bordelon amounted to Three Hundred Twenty-Three and 40/ioo ($323.40) Dollars.
Vulcan Materials Company paid to David K. Bordelon workmen’s compensation from and including December 15, 1979, through and including January 29, 1980, at the rate of One Hundred Forty-Eight and No/100 ($148.00) Dollars per week. This represents 64Aths weeks of compensation and totals Nine Hundred Seventy-Two and 56/ioo ($972.56) Dollars.
Vulcan Materials Company also paid David K. Bordelon workmen’s Compensation from and including January 9, 1981, through and including August 20, 1981, at the rate of Forty-Four and No/100 ($44.00) Dollars per week. This represents thirty-two (32) weeks of compensation and totals One Thousand Four Hundred Eight and No/100 ($1,408.00) Dollars. These weekly compensation benefits (at the rate of $44.00 per week) were based upon Vulcan’s interpretation of a medical report by Dr. Randal Caffarel addressed to counsel for plaintiff dated December 15,1980, which was forwarded by counsel for plaintiff to Mr. Ron Ewing in Vulcan’s claim office in Birmingham, Alabama. This report of December 15, 1980, was received by Vulcan on January 3, 1981. The check of Vulcan Materials Company for workmen’s compensation for the period January 9, 1981, through January 15, 1981, was mailed in Birmingham, Alabama, the location of the claim office of Vulcan Materials Company, addressed to the attorney of David K. Bordelon, and was received by him on January 17, 1981. Weekly benefits at the rate of $44.00 per week were discontinued on August 20, 1981, based upon Vulcan’s interpretation of the deposition testimony of Dr. Randal Caffarel.
Accordingly, the total amount of workmen’s compensation paid by Vulcan Materials Company to David K. Bordelon is Two Thousand Three Hundred Eighty and 66/ioo ($2,380.56) Dollars.
In addition, the medical paid by Vulcan Materials Company on behalf of David K. Bordelon amounts to Two Thousand One Hundred Fifty and 84/ioo ($2,150.84) Dollars, being all medical expenses submitted thus far.
DISABILITY
The district judge found that “plaintiff herein has sustained the loss of use or function of his eye.” Apparently, the district court found that Bordelon proved that he sustained permanent partial loss of use or function of one of his eyes (although he did not state which eye), thereby entitling him to workmen’s compensation benefits pursuant to La.R.S. 23:1221(4)(i) and (o).[1] *172 Bordelon contends that he sustained permanent partial loss of use or function of both eyes and should be compensated accordingly.
The claimant in a workmen’s compensation proceeding bears the burden of proving the nature and extent of his disability by a preponderance of the evidence. The issue of whether or not he has carried this burden must be determined by examining the totality of the evidence, including both lay and medical testimony. Thornell v. Payne and Keller, Inc., 442 So.2d 536 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1231 (La.1984).
Only two witnesses testified at trial: Bordelon and Dr. Randal Caffarel. The parties also entered a stipulation at trial that if Dr. Carl J. Steffak, engaged in the general practice of medicine, were called to testify he would testify substantially as follows:
1. That on June 28, 1978, at the request of Vulcan Materials Company, he conducted a pre-employment physical examination of David Keith Bordelon, Plaintiff in these proceedings.

4. That at the time of this examination, Mr. Bordelon’s vision was normal and there was no evidence of any disease or injury to Mr. Bordelon’s eyes.

6. That at the time of his examination, Mr. Bordelon did not need eye glasses or other corrective devices for his eyes.
David Bordelon testified that when the accident occurred he was employed by Vulcan as a control technician. His duties were to monitor instruments (pressure gauges, temperature gauges and other like instruments) and take readings in the control room at Vulcan’s plant in Geismar. After the accident, he resumed his duties as a control technician. He remained at this position until 1981 when he became an equipment technician, an outside job involving opening of pumps and valves, starting pumps, taking readings and catching samples. Prior to the accident, Bordelon did not have any difficulties with his eyes and did not need prescription glasses. Since the accident, he has not been able to see as well as he could before the accident and has problems with blurring in both eyes (but mostly in the right eye), floating spots in his right eye and astigmatism. He has difficulty with bright lights because of the damaged pupil in his right eye which sometimes causes headaches and requires him to wear dark glasses. He also has trouble focusing and gets headaches from eye strain during prolonged reading. The only effect on his job performance has been that he has to concentrate more and it takes him a little longer to take his readings from the fine instruments and smaller gauges. However, with his prescription glasses on, he has been able to perform his job duties with only minor discomforts. Vulcan has provided him with a pair of prescription safety glasses for use at work.
Dr. Randal Caffarel, an expert in the field of ophthalmology, treated Bordelon for his accident-related injuries. Dr. Caf-farel initially saw Bordelon at his office on December 14, 1979, but he was taken to a hospital for further examination. Dr. Caf-farel’s examination revealed that Bordelon had sustained multiple minor lacerations about his face and eyes not requiring suturing. He had at least one laceration on each upper eyelid which was sutured; he had damage to the globe of the eyeball of both eyes, including what is called a “hyphema” (blood in the front part of the eye between the iris and cornea); he had a tearing away of the face of the iris from its attachment in the right eye (between the 2 o’clock to 4 o’clock positions); and he had superficial lacerations of the corneas. Bor-delon’s injuries were bandaged, and he was hospitalized until the blood in his eyes dissolved. On December 24, 1979, Bordelon was discharged from the hospital and sent home.
Dr. Caffarel continued treating Bordelon for his injuries. The following are the dates and findings of each visit:
1. December 28, 1979 — right eye causing headaches; findings essentially the *173 same; blood disappeared from inside of eye; eyes still very irritated;
2. January 3, 1980 — examination disclosed a small subcapular cataract (an opacity or spot in the lens of the eye) in the left eye; also, found elevated pressure in the right eye which was secondary to the trauma, such condition called “traumatic glaucoma”; Bordelon placed on glaucoma medications;
3. January 10, 1980 — visual acuity (ability to see) improving to 20/25 in the right eye and 20/20 in the left eye uncorrected; cataract in left eye still present; eyes healing, but still irritated in right eye; medication for pressure level continued;
4. January 25, 1980 — lens changes stable but not progressing; still had traumatic cataract; intraocular pressure in right eye slightly elevated and medication increased; Bordelon told he could return to work;
5. February 7, 1980 — eyes looking much better; intraocular pressure normal; still had inflammatory cells in right eye; vision corrected to 20/20 in each eye;
6. April 21, 1980 — eyes appeared to be quiet; no further inflammatory cells found; intraocular pressure normal in each eye; eyes refracted and farsightedness found in both eyes (not caused by the accident); some hyperopia found in right eye and hyperopic or hyperopian and astigmatism found in left eye; some of the medications for the traumatic glaucoma discontinued;
7. July 18, 1980 — Intraocular pressure normal; eyes refracted and again found hyperopia and also some astigmatism in both eyes; given a prescription for corrective glasses; visual fields (measure of peripheral vision) normal;
8. October 15, 1980 — intraocular pressure normal and all glaucoma medication discontinued; visual acuity uncorrected was 20/20 in right eye and 20/20 minus (did not read all of line on chart correctly) in left eye; no changes made in glasses;
9. May 5, 1981 — no complaints; uneor-rected visual acuity was 20/20 in each eye; intraocular pressure normal; retina normal; everything essentially the same;
10. July 17, 1981 — Bordelon having trouble with balance and his eyes hurt more when outside; uncorrected visual acuity was 20/20 in right eye and 20/20 minus in left eye; corrected visual acuity was 20/20 in each eye; pupil range and motions normal; intraocular pressure normal; eyes dilated, revealing irregular pupil in right eye secondary to the fact that base of iris torn loose; has corneal scar in right eye over where iris once attached; has anterior cataract in left eye which has not changed; has scar in left eye towards center of cornea; glass prescription changed;
11. February 23, 1982 — complaining that eyes hurt and were red; intraocular pressure unchanged; visual acuity was 20/20 in right eye and 20/20 minus in left eye with correction (glasses on); eyes dilated and no change in scars or cataract noted; eyes refracted and glasses changed; given prescription for astigmatism; corrected vision was 20/20 in each eye; and
12. August 10, 1982 — last examination; vision corrected was 20/20; intraocular pressure normal; appearance of eyes same as previous visit.
Dr. Caffarel testified that Bordelon had astigmatism in both eyes and this condition was apparently permanent. This condition was caused by cornea abrasions Bordelon sustained in the accident which healed but left cornea scars. The astigmatism does not decrease Bordelon’s visual acuity, but it has affected his ability to focus and causes blurring of things near and far. For example, the astigmatism blurs small print up close as well as road signs at a distance. The eyes can compensate for a certain amount of astigmatism, but this ability to focus decreases with age. It is possible that Bordelon will have trouble focusing and his vision will become blurred when attempting to maintain focus for a period of time (10-15 minutes). This will occur as *174 the eye muscles tire and lose their ability to compensate for the astigmatism. It is also possible the astigmatism could cause headaches and would cause problems in reading gauges with close lines. The only treatment for astigmatism is corrective lens. Corrective lens were prescribed for Borde-lon’s astigmatism. The lacerations or scarring on the cornea of both eyes also made glare and bright lights much worse for Bordelon. This condition was permanent and could only be treated by wearing dark glasses.
Bordelon also has irododialysis of the right eye. This is an iris which has torn loose from its peripheral attachment. As a result, Bordelon has an irregular shaped pupil in his right eye and has a secondary pupil through which the retina can be seen. This condition is permanent and causes an increased sensitivity to light and could possibly cause squinting in bright lights. The only treatment for this condition is to wear dark glasses.
Bordelon had traumatic glaucoma (elevated pressure) in his right eye which was caused by a decreased drainage of fluid from the eye. This condition was secondary to the trauma Bordelon sustained in the accident. The glaucoma has cleared up, but he has an increased risk of developing glaucoma in the future. Because of this increased possibility of developing glaucoma, Bordelon should be examined every six months for an indefinite period of time, possibly for his entire life.
Finally, Bordelon has a cataract in his left eye. This condition is permanent and probably will remain unchanged. It makes him more susceptible to cataract problems in the future which could require surgery.
Although Bordelon’s astigmatism and cataract conditions are permanent, they have not decreased his visual acuity or ability to see. His visual acuity and visual fields tested within normal limits. His ex-traocular movement (way eye moves in socket) is normal. These three combined tests (visual acuity, visual fields and ex-traocular movement) are used to determine visual impairment and the percentage of impairment of the visual system. Since Bordelon tested normal on all three categories, Dr. Caffarel concluded that, technically, he had no permanent impairment. Dr. Caffarel found that Bordelon had to wear glasses and did not see quite as well without them; that the condition of his eyes was something less than before the accident because of the cornea scarring in both eyes, the torn iris in the right eye and the increased propensity to develop more problems in the future; and that he did have some problems with his job. However, these problems are not considered by an ophthalmologist when arriving at a determination of permanent impairment or loss of use or function of an eye.
Based on a review of the lay and medical testimony as detailed extensively above, we find that Bordelon proved by a preponderance of the evidence that he sustained a permanent loss of use or function of both eyes. Although not measurable by technical medical standards, Bordelon’s conditions (traumatic glaucoma and irodo-dialysis in the right eye, cataract in the left eye and astigmatism in both eyes) have increased his susceptibility, probability and risk of developing additional eye problems in the future. Cf. Deleon v. Home Indemnity Company, 444 So.2d 685 (La.App. 5th Cir.1984). The irododialysis, cataract and astigmatisms are permanent. Further, Bordelon must wear prescription glasses to maintain a focus for an extended period of time and to avoid blurring of vision. The glasses must also have a dark tint to filter out bright lights and sunlight to control his astigmatism in both eyes. An employee’s loss of function is evaluated and compensa-ble based on his natural body’s loss of function, even though man-made artifices may temporarily alleviate the loss of function. Jenkins v. Orleans Parish School Board, 310 So.2d 831 (La.1975). These conditions constitute a permanent partial loss of use or function of both eyes.
To determine an award under the formula provided in La.R.S. 23:1221(4)(o) for loss of use or function, the percentage of loss is utilized. Dr. Caffarel did not *175 assign any percentage of loss of use or function to Bordelon’s eyes because of his inability to measure Bordelon’s conditions within the technical standards normally used for medically determining permanent impairment. The district judge did not assign a percentage in his reasons for judgment.[2] Notwithstanding this lack of evidence, Bordelon’s proof that he has sustained at least some loss of use or function of both eyes, regardless of how small this percentage may be, is sufficient evidence for this court to award the statutory minimum of $44 per week for both eyes.
Since both eyes have been affected permanently, the compensable period of 100 weeks for the permanent partial loss of use or function of one eye must be cumula-ted to reflect the permanent injury to both eyes.[3] La.R.S. 23:1221(4)(i) and (o); Malone & Johnson, Workers’ Compensation Law and Practice § 283 in Louisiana Civil Law Treatise 656 (1980). Therefore, the trial court’s judgment is amended to award Bor-delon $44 per week for 200 weeks (rather than 100 weeks), subject to a credit of $972.56 (total temporary disability benefits of $148 per week for 6[4]/⅛ weeks) and $44 per week for 32 weeks (scheduled loss of use benefits). La.R.S. 23:1223; Arvie v. Oilfield Construction Company, 428 So.2d 1297 (La.App. 3rd Cir.1983).
DISFIGUREMENT
Bordelon contends that the district court erred in failing to award him compensation, pursuant to La.R.S. 23:1221(4)(p), for the serious, permanent disfigurement he sustained about his face and head in the accident. La.R.S. 23:1221(4)(p) was amended by Acts 1983, 1st Ex. Sess., No. 1, § 1. At the time of the accident, this provision read as follows:
in cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-six and two-thirds, per centum of wages during one hundred weeks.
This issue was addressed in Jones v. Brown & Root, Inc., 379 So.2d 872, 874 (La.App. 4th Cir.1980), in which the court held:
Where the statute provides a specific schedule of compensation for the loss, or partial loss, of use or function of a member, it shall control and shall prevail over the general savings section of the statute covering those injuries to unlisted members. The partial permanent loss of the use or function of the eye falls within the specific provisions of the statute and as a result the provisions of § 1221(4)(p) are rendered inoperative.
See also LaFleur v. Seaboard Fire and Marine Insurance Co., 296 So.2d 860 (La.App. 3rd Cir.1974), writ refused, 300 So.2d 185 (La.1974). Contra: Curry v. Vanan-twerpen, 278 So.2d 793 (La.App. 3rd Cir. 1973). Appellant’s recovery under La.R.S. 23:1221(4)(i), (o) precludes recovery under La.R.S. 23:1221(4)(p) because La.R.S. 23:1221(4)(p) is only applicable to “eases not falling within any of the provisions already made” in La.R.S. 23:1221.
STATUTORY PENALTIES
The district court denied Bordelon’s claim for statutory penalties with the following language:
*176 The court is of the opinion that defendant’s decision to terminate benefits was based on a reasonable interpretation of the medical evidence available to it at the time termination took place.
Bordelon contends that the district court erred by not finding that Vulcan was arbitrary, capricious, or without probable cause in failing to pay workmen’s compensation benefits for the period of January 30, 1980, to January 8, 1981, and in discontinuing benefit payments on August 20, 1981.
La.R.S. 23:1201.2(A)[4] provides for statutory penalties, in pertinent part, as follows:
Any employer whose liability for claims arising under the provisions of this Chapter is not covered by insurance, shall pay the amount of any claim due under the provisions of this Chapter, within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer to a penalty, in addition to the amount of claim due, of 12% of the total amount of such claim, payable to the claimant, together with all reasonable attorney’s fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due, and all reasonable attorney’s fees for the prosecution and collection of such amount. Any such employer who at any time discontinues payment of claims due and arising under the provisions of this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the penalties set forth above, payable to the claimant, together with all reasonable attorney’s fees for the prosecution and collection of such claims.
Vulcan commenced making workmen’s compensation payments of $148 per week on December 15, 1979 (day after the accident), and discontinued these payments on January 29, 1980, when Bordelon returned to work. Vulcan again resumed payments of $44 per week on January 9, 1981, based on its interpretation of Dr. Caffarel’s medical report (dated December 15, 1980, and received by Vulcan on January 3, 1981) and discontinued making these payments on August 20,1981, based on its interpretation of the deposition of Dr. Caffarel taken on July 30, 1981.
The medical evidence indicates that on January 25, 1980, Dr. Caffarel advised Bor-delon that he could return to work. On January 30, 1980, Bordelon resumed his duties with Vulcan. No limitations were placed on his activities and no disability was assigned by Dr. Caffarel. Further, there was no medical evidence at this point to indicate that Bordelon had suffered a permanent partial loss of use or function of his eye or eyes which would trigger the benefits provided in La.R.S. 23:1221(4).
Vulcan resumed making workmen’s compensation benefits of $44 per week on January 9, 1981, based on a medical report by Dr. Caffarel.[5] These benefits were discontinued on August 20, 1981, based on Dr. Caffarel's deposition testimony. At the deposition, Dr. Caffarel testified that, according to the “PDR” for ophthalmology (standard handbook for rating disabilities), Bordelon had no disability.
When compensation benefits are terminated based on competent medical evidence, the action is not arbitrary and capricious. Atlee v. Stone & Webster Engineering, Inc., 428 So.2d 569 (La.App. 3rd Cir.1983); Donald v. Big Three Industries, Inc., 426 So.2d 257 (La.App. 1st Cir.1983), writ denied, 429 So.2d 157 (La.1983). The employer’s conduct in discontinuing workmen’s compensation benefits must be *177 judged primarily upon the facts existing and known to him at the time the payments were stopped. Celestin v. Fireman’s Fund Insurance Company, 430 So.2d 1263 (La.App. 1st Cir.1983). Vulcan reasonably relied on the medical information submitted to it, and its actions were not arbitrary, capricious or without probable cause.
Accordingly, the district court correctly denied statutory penalties.
EXPERT WITNESS FEE OF DR. CAFFAREL
At trial, Dr. Caffarel was accepted by the court as an expert in the field of ophthalmology. After completing his testimony, plaintiffs counsel requested that the court fix an expert witness fee for Dr. Caffarel. In making this request, plaintiffs counsel asked that the court take into consideration that Dr. Caffarel had been on the stand almost one hour and that he had to drive from Baton Rouge and back to attend court in Ascension Parish. The district court judgment failed to fix and assess as costs the expert witness fee of Dr. Caffarel. Appellant contends that the trial court erred in this respect.
Expert witness fees are mandatory under La.R.S. 13:3666(A), which provides as follows:
Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof,' shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required, (emphasis ours).
Brack v. McClanahan, 417 So.2d 1364 (La.App. 4th Cir.1982).
The amount of the expert witness fee can be arrived at from the testimony adduced upon the trial of the cause without thé necessity of a contradictory rule. La.R.S. 13:3666(B)(1); Bain v. Anderson, 427 So.2d 60 (La.App. 4th Cir.1983).
Dr. Caffarel’s testimony was crucial evidence concerning Bordelon’s medical condition. Without this detailed medical testimony, Bordelon would have failed in proving his claim. Therefore, Dr. Caffarel is entitled to reasonable compensation for his appearance in court and for preparatory work done, and the fee allowed should be in line with those allowed in similar cases. Town of Krotz Springs v. Weinstein, 401 So.2d 664 (La.App. 3rd Cir. 1981).
Accordingly, we find that Dr. Caffarel is entitled to an expert witness fee of $300, to be taxed as costs and assessed to Vulcan. Oshinski v. Central National Insurance Company of Omaha, 432 So.2d 929 (La.App. 4th Cir.1983), writ denied, 440 So.2d 148 (La.1983).
DECREE
For the foregoing reasons, the judgment of the district court finding a permanent partial loss of use of one eye is amended to find a permanent partial loss of use of two eyes; the award is amended to grant Bor-delon permanent partial loss of use compensation benefits of $44 per week for a period of 200 weeks, subject to credits of $972.56 and $44 per week for 32 weeks; and the district court judgment is further amended to assess an expert witness fee of $300 for Dr. Caffarel, which fee is taxed as costs. In all other respects, the judgment is affirmed. Vulcan is cast for all costs.
AMENDED AND AFFIRMED.

. La.R.S. 23:1221(4) was amended by Acts 1983, 1st Ex. Sess. No. 1, § 1. At the time of the accident, the applicable provisions of this section provided as follows:
(4) In the following cases, the compensation shall be as follows:

(i) For the loss of an eye, sixty-six and two-thirds per centum of wages during one hundred weeks.

(o) In all cases involving a permanent partial loss of use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member.

. Based on Bordelon’s average weekly salary of $323.40, a finding by the trial court of loss of use or function of an eye of around 13.6% or less would have led to an award of the statutory minimum award of $44 (20% of $222 [stipulated average weekly wage paid in all employment subject to the Louisiana Employment Law]). La.R.S. 23:1202; Jones v. Brown & Root, Inc., 379 So.2d 872 (La.App. 4th Cir.1980). Therefore, it is apparent that the trial court found that the percentage of loss of use or function of Bordelon’s eye was 13.6% or less.

. There is no specific statutory limitation on this cumulation as is the case for individual losses of fingers and toes under La.R.S. 23:1221(4)(z).

. This statute has since been amended by Acts 1983, 1st Ex. Sess., No. 1, § 1.

. This medical report was not introduced into evidence (it was only attached as an exhibit to Vulcan’s answer). This report indicates that Bordelon had a 10% loss of function of the left eye.