442 So.2d 1388 (1983)
Thomas H. CHAPMAN, et al, Plaintiff-Appellant,
v.
HOME INDEMNITY COMPANY, Defendant-Appellee.
No. 83-517.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1983.
Alvis J. Roche, Lake Charles, for plaintiff-appellant.
Raggio, Cappel, Chozen & Berniard, Richard B. Cappel, Lake Charles, for defendant-appellee.
Before GUIDRY, FORET and KNOLL, JJ.
FORET, Judge.
This is a worker's compensation suit filed by plaintiff, Ethel Chapman, against defendant, Home Indemnity Company, for accrued worker's compensation benefits, statutory penalties and attorney's fees. From a judgment in favor of defendant, Mrs. Chapman has appealed. The issue on appeal is whether the heir of a worker's compensation beneficiary is entitled to receive the entire amount of scheduled benefits which would have been available to the deceased had he not died.
Plaintiff's son, Thomas Chapman, was employed as a butcher at Sonny's Supermarket, earning an average weekly wage of $296.40. On January 21, 1981, Thomas was injured while in the course and scope of his employment which resulted in half of his left index finger being traumatically amputated. Subsequently, the remainder of his finger was surgically removed.
At the time of the accident, Home Indemnity Company was the worker's compensation insurer for Sonny's Supermarket. They immediately began paying weekly benefits at the maximum rate of $163 per week and continued paying through June 24, 1981, for a total period of 22 weeks. *1389 Home Indemnity also paid all known medical expenses. On July 2, 1981, Thomas Chapman died from an incident totally unconnected to his work-related accident of January 21, 1981.
Home Indemnity timely tendered to Mrs. Chapman a check in the amount of $186.29, which represented the accrued benefits for the period from June 24, 1981, the date of the last payment, to July 2, 1981, the date of Thomas Chapman's death. Mrs. Chapman refused to accept the tendered amount, and filed suit contending that the amputation resulted in a scheduled loss[1], and that she, as the sole heir of the deceased, was entitled to judgment for the full amount which would have been due under the schedule had her son lived, subject to a credit for the benefits previously paid. The trial judge ruled that the plaintiff was entitled to only $186.29 and rejected all of her remaining claims. She appealed. We affirm.
The right of an employee to enforce the obligation of an employer to pay disability benefits is a heritable property right which is transmitted to his heirs upon his death. This rule, however, is limited to the benefits which had accrued to the employee prior to his death. Weekly benefits which would have been paid, but for the death of the employee, are not considered accrued benefits. Guillot v. Weaver Brothers & Thompson Lumber Company, 31 So.2d 278 (La.App. 2 Cir.1947); Turner v. Southern Wheel and Rim Service, Inc., 332 So.2d 770 (La.1976).
The plaintiff contends that a different rule should apply in the case of a scheduled loss. She argues that on the date of the amputation her son had a vested right in 150 weeks of benefits under LSA-R.S. 23:1221(4)(e), and that upon his death, she inherited his right to those benefits. We disagree.
The general purpose of the disability section of the worker's compensation statute is to compensate an employee during the "period of such disability". LSA-R.S. 23:1221, paragraphs 1, 2 and 3. That is why an employer can have no obligation to pay benefits other than on a weekly basis. Once an employee dies, the disability terminates and along with it goes the employer's obligation to pay. This is the basic rationale behind the Guillot decision and its progeny.
The scheduled benefits portion of the statute is in the same section as the one dealing with general disability benefits and is intended as a parallel remedy. Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982). Both provide for benefits only on a weekly basis. LSA-R.S. 23:1221. Had the legislature felt a different rule was needed for scheduled benefits, it would have provided for a lump sum award instead of payments on a weekly basis.
When Thomas Chapman died, his disability ended, and along with it went his right to any future benefits. At the time of his death, he had a vested right in the $186.29 in benefits which had accrued, but not to the 150 weeks which were potentially available. Ethel Chapman, as heir of her *1390 son, is entitled to $186.29 in accrued benefits, but nothing more.

DECREE
For the reasons set forth above, the judgment of the trial court is affirmed. All costs of this appeal are assessed against Ethel Chapman.
AFFIRMED.
NOTES
[1] LSA-R.S. 23:1221 provides, in pertinent part:

"SUBPART B. DISABILITY BENEFITS
§ 1221. Temporary, permanent, or partial disability; schedule of payments
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
. . . . .
(4) In the following cases, the compensation shall be as follows:
. . . . .
(b) For the loss of a first finger, commonly called the index finger, sixty-six and two-thirds per centum of wages during thirty weeks.
. . . . .
(e) For the loss of a hand, sixty-six and two-thirds per centum of wages during one hundred fifty weeks."
Mrs. Chapman contends that the loss of the index finger resulted in a total loss of use of the hand under paragraph (e) and entitles her to 150 weeks of benefits. Home Indemnity argues that should plaintiff be entitled to the full amount of benefits under the scheduled benefits section, paragraph (b) is applicable and only 30 weeks of benefits are due.