CHEHARDY, Judge.
The Home Indemnity Company and Oil Country Tubular Consultants, Inc. (OCTC), defendants, have appealed from a judgment awarding worker’s compensation ben *687 efits to plaintiff, Terrell A. Deleon. The defendants contend Deleon’s injury was caused by his willful intention to injure another employee and therefore he is not entitled to benefits. Deleon, in turn, has answered the appeal, contending he is entitled to penalties and attorney’s fees because the defendants’ refusal to pay him compensation benefits was arbitrary and capricious.
The only undisputed facts regarding causation of Deleon’s injury are that he was punched in the eye on October 6, 1981, and that a fellow employee struck the blow. Beyond that, the witnesses at trial presented radically differing versions of the incident.
Darryl E. Williams, the employee who struck Deleon, testified as follows: He was a crew foreman for Oil Field Sales and Services (OFS), a sister company of plaintiff’s employer, OCTC. On the morning of the incident in question, he and his crew were scheduled to work with Deleon; Deleon was supposed to be at work at 6:00 a.m., but did not come in until 6:25 or 6:30. Williams asked him why he was late, to which Deleon replied with obscenities and a racial slur. Deleon told Williams he was Williams’ supervisor, which Williams denied. Suddenly Deleon attacked Williams, giving him a forearm to the chest, grabbing Williams and hitting him. Williams broke loose, swung once, and connected with a “lucky” punch, striking Deleon. No more blows were exchanged. Deleon then told Williams he was fired and Williams replied Deleon did not have authority to fire him. Williams testified he had been struck in the chest and on his right cheek; he thought he had probably sustained bruises, but had not reported any injuries to the company.
Eules Paul, a forklift operator for OFS, testified he witnessed the incident. He said Williams asked Deleon why he was late, that Deleon replied he was a supervisor and did not have to be to work at six o’clock. He could not say whether any obscenities or other harsh words were exchanged, but said the next thing he knew Deleon swung at Williams, Williams threw up his hands and blocked the blow, and then Williams punched Deleon in the right eye. He said that was the only physical contact between the two.
Sidney Poche, who was operations manager of the company at the time of the incident, did not witness the fight but investigated it. He stated he had talked to Williams, to Paul, and also to Curtis Campbell, who was present during the fight but did not testify at trial. The stories told him by Williams and Paul corroborated their testimony at trial. Campbell told him he had not actually seen the blows exchanged, but had heard the derogatory remarks and racial slurs directed by Deleon to Williams. Poche said he also interviewed Deleon, who told him that the argument broke out over who got to work at what time, that he had told Williams he was fired, and that he had not thrown any punches.
Deleon testified, on the other hand, that he arrived at the OFS yard at six a.m., but the gates were locked and he could not get in, so he went to the OCTC office to make some phone calls. By the time he returned to the OFS yard, the gates had been opened. He began directing the crew members to load the materials for their job, and asked Williams to place something on the truck. Williams refused, using an obscenity and a racial slur. Deleon asked him again, and Williams refused in the same way. Deleon then told Williams if he did not want to work he should go home, to which Williams replied Deleon did not have authority to tell him to leave, repeating the racial slurs.
Deleon stated Williams continued to manifest hostility so Deleon decided to leave him alone and went to the supply room. Deleon was standing at the counter in the supply room with his back to the door and could hear Williams in the background yelling all types of things. Williams was motivating other people to become hostile.
Suddenly Deleon was hit from behind, stumbled back and lost his balance. Williams was coming at him, so Deleon placed him in a bear hug to stop Williams from *688 hitting him again. Deleon tried to calm Williams down, but Williams kept screaming vulgarities. Deleon released him and hurried into the office to call his supervisor.
Deleon stated he took no aggressive moves, only defensive actions. The blow had connected with his left eye, which swelled completely closed, and his nose was bleeding. He left and sought medical attention.
In oral reasons for judgment, the trial court stated,
“After listening to this testimony, I am not at all sure who provoked this incident. So, I must give the worker the benefit of the doubt. I just cannot say that the insurance company has carried its burden of proving by a preponderance of the evidence that the plaintiff wilfully intended to injure his coworker, Darryl Williams.
“So, I find that he is entitled to compensation benefits.”
LSA-R.S. 23:1081 states that no worker’s compensation shall be allowed for an injury caused by the injured employee’s willful intention to injure himself or to injure another. In determining whether or not an employer shall be relieved of paying compensation for this reason, the statute provides, the burden of proof shall be upon the employer.
It is a long-settled rule of law that the reviewing court must give great weight to the factual conclusions of the trier of fact. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact shall not be disturbed, even though the appellate court may feel its own evaluations and inferences are as reasonable. Canter v. Koehring Company, 283 So.2d 716 (La. 1973).
The liability issue in this case turns wholly on the credibility of the witnesses. The trial judge obviously was unable to decide which side to believe. Our own review of the record reveals no manifest error, and we cannot say the trial court’s credibility evaluation — or difficulty in making a credibility evaluation — was unreasonable, considering “the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record) * * *.” Canter v. Koehring Company, supra, at 724.
Accordingly, we must next consider the amount of benefits awarded. The defendants-appellants aver the trial court erred in awarding plaintiff benefits not only for six weeks of temporary total disability under LSA-R.S. 23:1221(1), but also for “serious permanent disfigurement” of the face and “serious and permanent impairment of usefulness of a physical function” under R.S. 23:1221(4)(p).
Defendants’ contention is partly correct. R.S. 23:1221(4)(p) relating to benefits for permanent disfigurement and impairment, states that subparagraph (p) is applicable only “[i]n eases not falling within any of the provisions already made.”
The medical testimony in this case establishes that plaintiff’s eye injury has left him with a partial loss of function of his left eye. Specifically, he sustained permanent damage to the drainage apparatus of the eye, leaving him with a much greater-than-average probability of developing glaucoma. Plaintiff testified he still experiences frequent watering of the eye and weakness of the eyelid muscle. His treating physician testified this amounted to a five- to ten-percent permanent partial loss of the use of the left eye.
This evidence clearly places plaintiff’s injury within R.S. 23:1221(4)(o), “permanent partial loss of the use or function” of a scheduled body part. Because the injury falls within a scheduled disability, benefits may not be awarded under paragraph (4), subparagraph (p) of the statute. Jones v. Brown & Root, Inc., 379 So.2d 872 (La.App. 4 Cir.1980).
We reject defendants’ argument that plaintiff, if entitled to benefits, should receive them only for the six weeks after the incident when he was totally disabled. Although he returned to work after that peri *689 od, he is still eligible for further benefits under paragraph (4), subparagraph (o), as discussed above. However, defendants are entitled to deduct the compensation to be paid under the award under paragraph (1) from the compensation allowed under paragraph (4), subparagraph (o). LSA-R.S. 23:1223.
As to the amount to be awarded, R.S. 23:1221(4)(o) states, “compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member * * Paragraph (4), subparagraph (i), dealing with loss of an eye, allows 66⅜ percent of wages during 100 weeks. Accordingly, the amount awarded shall be the proportionate disability of plaintiff’s eye, multiplied by 66⅜ percent of his wages during 100 weeks.
Deleon’s average weekly wage was determined by the judge to be $438.00. Accordingly, the calculation to be used would be as follows:
66% x 100 x .10 (percentage disability established by doctor) x $438 = $2,921.46.
As pointed out by defendants, however, this amounts to less than the statutory minimum allowable on the date of the accident, which was $55.00 per week. Accordingly, plaintiff is entitled to receive the statutory minimum during 100 weeks, or $5,500.00, plus interest on each payment from the date each became due until paid.
Finally, we find no merit to plaintiff’s contention, raised in his answer to the appeal, that he is entitled to penalties and attorney’s fees. The party seeking penalties and attorney’s fees in a worker’s compensation case bears the burden of proving that the defendants acted arbitrarily and capriciously in refusing to pay benefits. The plaintiff contends that because the insurer never contacted him to obtain a statement or a deposition regarding his side of the story, the insurer was arbitrary in denying his claim.
The evidence establishes, however, that the insurer did conduct an investigation, questioning Williams, Paul and other OFS employees about the incident. They related the stories they told at trial; which portrayed Deleon as the aggressor of the fight. Based on this information, the insurer denied the claim.
The trial judge stated, “I cannot say they were arbitrary under the evidence that I have heard today.” We find no manifest error in this conclusion.
For the foregoing reasons, the judgment of the district court is affirmed in part, amended in part, and recast.
It is ordered, adjudged and decreed that there be judgment in favor of Terrell A. Deleon and against The Home Indemnity Company and Oil Country Tubular Consultants, Inc., in solido, for worker’s compensation benefits as follows:
1. Defendants are to pay to the plaintiff the sum of $163.00 weekly benefits for a period beginning October 6, 1981 through November 17, 1981, a total of six weeks, with legal interest on each payment from the date each became due until paid.
2. Defendants are to pay plaintiff the sum of $5,500.00, representing the statutory minimum average weekly wage for 100 weeks, commencing November 18, 1981, with interest on each payment from the date it became due until paid. Defendants are to receive a credit against this award for amounts paid pursuant to the award in paragraph 1 above.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff and against the defendants, in soli-do, for reimbursement of medical expenses totalling $379.18, and for the sum of $511.80, representing expert witness fees paid by the plaintiff to Dr. George Haik, cost of the deposition, and court reporting fees, together with legal interest from date of judicial demand until paid.
Defendants are cast for all costs of these proceedings, in solido.
AFFIRMED IN PART; AMENDED IN PART; AND RECAST.