472 So.2d 5 (1985)
David Keith BORDELON
v.
VULCAN MATERIALS COMPANY.
No. 84-C-1694.
Supreme Court of Louisiana.
June 28, 1985.
W. Leonard Werner, Baton Rouge, for plaintiff-applicant.
L. Michael Cooper, Baton Rouge, for respondent.
DENNIS, Justice.
In this worker's compensation case the problem is to decide which provision of the schedule for specific losses applies when a worker suffers a permanent partial loss of use of both eyes that does not make him totally or partially disabled to perform employment duties. The trial court awarded the employee 100 weeks of compensation based on the specific provision for the loss of one eye. The court of appeal increased *6 the award to 200 weeks of compensation, reasoning that the specific provision's compensable period of 100 weeks for the loss of use of one eye must be doubled to reflect a loss or impairment of both eyes, 454 So.2d 168. We amend the judgment to award compensation based upon the omnibus provision for cases of serious permanent impairment of physical function not falling within any of the specific loss provisions.[1] A permanent partial loss of use of both eyes cannot be compensated for fully under the specific provision for loss of use of one eye because the total effect of the impairment of both eyes is greater than the sum of the effects of the impairment of each eye independently. Furthermore the permanent impairment of both eyes in this case does not fall within the specific provision for loss of both eyes because there is conclusive proof that the impairment presently does not constitute partial disability of the plaintiff. Accordingly, since the case does not fall within any of the other specific loss provisions, the plaintiff will be compensated under the omnibus provision by allowing him such compensation as is reasonable and in proportion to the compensation provided for specifically, which in this case amounts to the maximum compensation allowable under the omnibus provision, sixty-six and two-thirds percent of wages for one hundred weeks.

Facts
There is no dispute over the facts or the conclusion that plaintiff, David K. Bordelon, suffered a permanent partial loss of use of both eyes as the result of a work accident. Bordelon was inspecting a flame inside a boiler on December 14, 1979 when the glass window through which he was looking exploded in his face. As a result of the accident Bordelon was hospitalized about ten days and off work from December 14, 1979 through January 29, 1980; he resumed work on January 30, 1980. Bordelon sustained multiple minor lacerations, including one on each eyelid requiring sutures. He had damage to the globes of his eyeballs, a tearing away of the face of the iris of the right eye, and lacerations of the corneas. The cornea abrasions healed causing astigmatism in both eyes, which does not decrease visual acuity but affects his ability to focus and causes blurring.
The court of appeal described the impairment of Bordelon's eyes as follows:
"The eyes can compensate for a certain amount of astigmatism, but this ability to focus decreases with age. It is possible that Bordelon will have trouble focussing and his vision will become blurred when attempting to maintain focus for a period of time (10-15 minutes). This will occur as the eye muscles tire and lose their ability to compensate for the astigmatism. It is also possible the astigmatism could cause headaches and would cause problems in reading gauges with close lines. The only treatment for astigmatism is corrective lens. Corrective lens were prescribed for Bordelon's astigmatism. The lacerations or scarring on the cornea of both eyes also made glare and bright lights much worse for Bordelon. This condition was permanent and could only be treated by wearing dark glasses.
"Bordelon had traumatic glaucoma (elevated pressure) in his right eye which was caused by a decreased drainage of fluid from the eye. This condition was secondary to the trauma Bordelon sustained in the accident. The glaucoma had cleared up, but he has an increased risk of developing glaucoma in the future. Because of this increased possibility of developing glaucoma, Bordelon should be examined every six months for an indefinite period of time, possibly for his entire life.
*7 "Finally, Bordelon has a cataract in his left eye. This condition is permanent and probably will remain unchanged. It makes him more susceptible to cataract problems in the future which could require surgery.
"Although Bordelon's astigmatism and cataract conditions are permanent, they have not decreased his visual acuity or ability to see. His visual acuity and visual fields tested within normal limits. His extraocular movement (way eye moves in socket) is normal. These three combined tests (visual acuity, visual fields and extraocular movement) are used to determine visual impairment and the percentage of impairment of the visual system. Since Bordelon tested normal on all three categories, Dr. Caffarel concluded that, technically, he had no permanent impairment. Dr. Caffarel found that Bordelon had to wear glasses and did not see quite as well without them; that the condition of his eyes was something less than before the accident because of the cornea scarring in both eyes, the torn iris in the right eye and the increased propensity to develop more problems with his job. However, these problems are not considered by an ophthalmologist when arriving at a determination of permanent impairment or loss of use or function of an eye."
The court of appeal gave its ultimate factual findings and conclusions:
"Based on a review of the lay and medical testimony as detailed extensively above, we find that Bordelon proved by a preponderance of the evidence that he sustained a permanent loss of use or function of both eyes. Although not measureable by technical medical standards, Bordelon's conditions (traumatic glaucoma and irododialysis in the right eye, cataract in the left eye and astigmatism in both eyes) have increased his susceptibility, probability and risk of developing additional eye problems in the future. Cf. Deleon v. Home Indemnity Company, 444 So.2d 685 (La.App. 5th Cir. 1984). The irododialysis, cataract and astigmatisms are permanent. Further, Bordelon must wear prescription glasses to maintain a focus for an extended period of time and to avoid blurring of vision. The glasses must also have a dark tint to filter out bright lights and sunlight to control his astigmatism in both eyes. An employee's loss of function is evaluated and compensable based on his natural body's loss of function, even though man-made artifices may temporarily alleviate the loss of function. Jenkins v. Orleans Parish School Board, 310 So.2d 831 (La.1975). These conditions constitute a permanent partial loss of use or function of both eyes."

Statutory Provisions Involved
In the worker's compensation statute, after the provisions for total and permanent disability, there is a schedule of specific losses accompanied by a provision for the number of weeks of compensation payable in each instance. The loss of one eye, for example, calls for an award of sixty-six and two-thirds per cent of wages for one hundred weeks, La.R.S. 23:1221(4)(i), (one eye provision), while the loss of both eyes, in the absence of conclusive proof to the contrary, constitutes permanent total disability. La.R.S. 23:1221(4)(j) (both eyes provision). Partial loss of an anatomical member which is permanent warrants a proportionately smaller award corresponding to the degree of impairment of the member. La.R.S. 23:1221(4)(o) (Partial loss provision). In case of serious permanent impairment of a physical function not falling within any other provision, the court may allow reasonable and proportionate compensation, not to exceed sixty-six and two-thirds percent of wages for one hundred weeks. La.R.S. 23:1221(4)(p) (omnibus provision).

Trial and Appellate Court Awards Complained Of
The trial court based its award on the "one eye" loss provision as modified by the "partial loss" provision, granting plaintiff compensation of twenty percent of the average weekly wage for one hundred weeks. Plaintiff's impairment of each eye is less than twenty percent, but minimum compensation is fixed by law at twenty percent of *8 the average weekly wage. La.R.S. 23:1202. The court of appeal increased the duration of the compensation to 200 weeks, reasoning that the compensable period for impairment of one eye must be doubled when both eyes are permanently injured.
In his application to this court, plaintiff contends that the courts below erred in not allowing recovery for permanent total disability under the "both eyes" loss provision as reduced proportionately under the "partial loss" provision. Plaintiff argues that because he suffered a loss of use of "both eyes" he should receive twenty percent of the average weekly wage for the duration of his permanent impairment, or, in effect, for life.

Application of Statutory Provisions
The permanent partial loss of use of plaintiff's eyes should be compensated for by an award based on the "omnibus" provision because this particular case does not fall under either the "one eye" or the "both eyes" provision. Accordingly, we will amend the award to allow, within the limits of our discretion, a reasonable and proportionate amount, viz., two-thirds of the average weekly wage for one hundred weeks.
The case of a loss of use or impairment of both eyes does not come within the limits or scope of the provision for the loss of one eye. Literally, the section makes provision only for the loss of one eye. To find in it a legislative intention that the courts by analogy should compensate for the loss of both eyes by simply doubling the compensation allowed for the loss of one is to defy logic and experience. Total blindness is more than twice as devastating as losing sight in one eye. To suppose otherwise would be only slightly less unrealistic than to pretend that the loss of both lungs is only twice as serious as losing one.
That the legislators intended to compensate for the synergetic effect of the loss or impairment of dual members is evident in the legislative history and scheme of the statute.[2] Before the statute's amendment in 1975, La.Acts 1975, No. 583, § 9, it provided the same number of weeks compensation for a schedule loss of both eyes as for permanent total disability. This was five times the number of weeks of compensation provided for in the case of the loss of one eye. La.Acts 1968, ex. sess., No. 25, § 1. When the limitation on weekly compensation payments for permanent total disability was removed by the 1975 amendments, the schedule was changed to provide that the loss of both eyes constitutes permanent total disability, except rarely *9 when there is conclusive proof that total blindness is not totally disabling. The schedule provision for the loss of one eye, allowing one hundred weeks of compensation, was not changed. Thus, the legislative aim continued to take into account the transcendent difference between the loss of both eyes and the loss of one.
Despite this constant legislative pattern, the lower courts interpreted the statute as disregarding the multiplier effect of dual eye injuries when the impairment to each eye is only partial. Under their view the 1975 amendments are seen as actually reducing an employee's recovery for permanent partial impairment of both eyes from that provided under former law by restricting him to compensation based on the one eye provision. There is nothing in the statute to indicate that this was intended. The language, history and purpose of the legislation, even without the liberal interpretation to which an employee is entitled, militate in favor of compensating employees who suffer dual eye injuries with at least correlative recovery under the provision concerning the loss of both eyes.
Plaintiff argues that he is entitled to twenty percent of permanent total disability compensation under the both eyes provision for the duration of his impairment. Although we agree that an employee who suffers partial loss of both eyes is presumptively entitled to recovery under this provision, we do not believe the legislature intended for his compensation to be based on a fractional reduction of permanent total disability payments.
In adopting the 1975 amendments, the legislature defined disability as the inability to engage in a gainful occupation for wages. An employee is totally disabled if he is unable to engage in any gainful occupation for wages. If he can engage in gainful occupation for wages, even though one different from his previous job or for which he has no special training, he is partially disabled. The partial disability award is for a maximum of 450 weeks and only to the extent that the employee actually earns less than he was earning at the time of his injury. It is fixed at two-thirds of the difference between his former wage and the amount of his actual earnings in any subsequent week. La.R.S. 23:1221(1), (2) & (3) (Supp.1975); Malone & Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation (2d ed.), § 275, p. 615.
The 1975 amendments, which changed and realigned the concepts of total and partial disability, were designed to restrict permanent total disability benefits by casting many compensation claims under the partial disability provisions which previously had been treated as total disability. Persons who had been entitled to permanent total disability benefits under former law merely because they could not return to precisely the same job and perform all the same tasks were relegated to partial disability benefits. Furthermore, the new partial disability sections provided, in effect, only a transition period for the injured worker. Unlike the permanent total disability award, the permanent partial disability award was restricted in duration and based upon wages the employee actually failed to earn. Malone & Johnson, supra.
As a correlate to these changes, the legislature must have intended that an employee who suffers only partial impairment of both eyes, and not loss of both eyes, is entitled to permanent partial disability benefits in the absence of conclusive proof to the contrary. This construction parallels the provision of the schedule with regard to the full loss of both eyes, recognizes the synergetic effect of partial dual eye impairment, and yet is consistent with the new total-partial disability dichotomy crafted by the statute. The interpretation argued for by the plaintiff, on the other hand, would grant an employee partially and permanently impaired in both eyes an absolute right to receive compensation for an unlimited period even if the employer proves conclusively that he is not disabled or that he has continued to earn the same wages. This view would give such claimants advantages under the law not enjoyed by employees who have been partially disabled by *10 nonschedule injuries or rendered totally blind by a work accident. There is nothing in the statute to imply that it should be read to reach such an anomalous result. We conclude, therefore, that to compensate employees suffering partial and permanent impairment of both eyes in proportion to employees sustaining total loss of both eyes requires that they be treated as if they were permanently partially disabled, in the absence of conclusive proof to the contrary.
Applying the statute, as interpreted, to the facts of the present case, it is evident that plaintiff's case does not fall within the both eyes provision because there is conclusive proof that he is not partially disabled. His injury did not produce any disability to perform the duties in which he was customarily engaged when injured. La.R.S. 23:1221(3). Except for the brief period following his accident, he has fully performed his duties for the same wage as before his injury.
Accordingly, this being a case not falling within any of the other provisions, and one in which the usefulness of a physical function is seriously permanently impaired, we are required by the omnibus provision to allow such compensation as is reasonable and in proportion to that provided for other cases by the schedule, not to exceed sixty-six and two-thirds percent of wages for one hundred weeks. We allow the maximum compensation authorized by the omnibus provision. Considering that the former law would have allowed the employee 500 compensation weeks at the minimum rate, considering further that under the 1975 amendments a somewhat more serious eye injury partially disabling him would have authorized benefits of up to sixty-six and two-thirds percent of wages for a maximum period of 450 weeks, we conclude that sixty-six and two-thirds percent of the average weekly wage for 100 weeks is proportionate and reasonable under the circumstances.
Although the condition of plaintiff's eyes presently does not prevent him from working, the evidence indicates that it could deteriorate and result in future total or partial disability. In this regard, La. R.S. 23:1331 provides that a compensation judgment may at the request of either party be modified "at any time six months after its rendition" on the ground that the "incapacity of the employee has been subsequently diminished or increased or that the judgment was obtained through error, fraud or misrepresentation." This reopening provision fits within the entire compensation scheme which envisions that payments should be made during the entire period of disability so long as the maximum period is not exceeded, and contemplates that necessary adjustments should be made after judgment to that end. Thus, the employee is not permitted to relitigate his original condition but must show a change in his compensable condition, such as progression, deterioration, or aggravation of the condition, achievement of disabling character by a previously asymptomatic complaint, appearance of new and more serious features, or failure to recover within the time originally predicted. See Larson, Workmen's Compensation Law, § 81.31(a). To enable our court-administered system to fulfill successfully a function performed elsewhere through a compensation commission with a continuing supervisory jurisdiction, the statute empowers the court to carry out the purpose of the statutecompensation so long as the worker is disabled, but no longer. Malone & Johnson, supra, § 284. Moreover, the court has authority to reopen and adjust an award for a loss of use or function as well as one for a partial or total disability, Harris v. Southern Carbon Co., 189 La. 992, 181 So. 469 (1938), and regardless of the size or duration of the award. Landreneau v. Liberty Mutual Ins. Co., 309 So.2d 283 (La.1975).

Penalties, Interest and Attorney's Fees
Plaintiff contends that the previous courts erred in not awarding penalties and attorney's fees because defendant's refusal to pay compensation timely on two separate occasions was arbitrary, capricious *11 and without probable cause. La.R.S. 23:1201.2. Defendant paid compensation following the accident until plaintiff returned to work. One year later, when defendant received a letter from plaintiff's doctor indicating that he had sustained a permanent eye injury as a result of the accident, defendant resumed payment of weekly compensation but refused to recognize its obligation to make payments accruing from the date plaintiff returned to work. Defendant again terminated compensation payments on August 20, 1981 after plaintiff's doctor testified at a deposition that, when corrected by eye glasses, plaintiff did not have a loss of use or function of his eyes.
In both instances defendant failed to make payment within sixty days of notice of facts not reasonably disputed indicating that plaintiff was entitled to compensation as of the dates claimed, and, therefore, its refusal to make payment in compliance with law was arbitrary, capricious and without probable cause. Once defendant became aware that plaintiff's work accident had resulted in permanent impairment of his vision the defendant was obliged to make payments of compensation commencing as of the date of the injury and continuing for one hundred weeks. La.R.S. 23:1221, 1224. Further, the claim of an injured employee for a specific loss of sight of an eye does not depend on his capacity to adapt to an ocular device or to work but is determined by whether he has suffered a permanent total or partial loss of the use or function of the eye. La.R.S. 23:1221(4)(o); See Jenkins v. Orleans Parish School Board, 310 So.2d 831 (La.1975). Accordingly, the defendant employer is subject to a penalty of twelve percent upon the two portions of the compensation as to which it was arbitrary, together with an attorney's fee of $3,000, which appears reasonable for prosecution and collection of such claim.
Plaintiff also complains that the court of appeal inadvertently failed to award legal interest on each weekly installment from its due date until paid. Plaintiff is entitled to such interest, and defendant does not contest the assignment of error. Accordingly, this court's decree will order the payment of interest.

Decree
The judgment of the Court of Appeal is amended to award plaintiff, for the permanent and serious impairment of the usefulness of both eyes, compensation benefits at the rate of $148 per week for a period of 100 weeks, subject to credits for $2380.56 in compensation already paid. Also, the defendant is cast for a twelve percent penalty on all compensation benefits as to which the defendant's failure to pay was arbitrary, capricious and without probable cause, as described in this opinion, as well as legal interest on each compensation installment from the date due and $3,000 in attorney fees.
NOTES
[1] La.R.S. 23:1221(4)(p) provides: "In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and in proportion to the compensation hereinabove specifically provided in the cases of specific disability not to exceed sixty-six and two-thirds per centum of wages during one hundred weeks."
[2] The recent legislative history of the one eye, both eyes, and total permanent disability provisions is as follows:

(1) La.Acts 1948, No. 175, § 1
§ 8.1(b) provides: "For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not, however, beyond four hundred weeks."
§ 8.1(d)(9) provides: "For the loss of an eye, sixty-five per centum of wages during one hundred weeks."
§ 8.1(d)(10) provides: "For the loss of ... both eyes, ... sixty-five per centum of wages during four hundred weeks."
(2) La.Acts 1968, ex. sess., No. 25, §§ 3 and 4, did not amend the one eye provision, but did amend the both eyes and permanent total disability provisionsLa.R.S. 23:1221(2) provides: "For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not beyond 500 weeks."
La.R.S. 23:1221(4)(j) provides: "For the loss of ... both eyes, ... sixty-five per centum of wages during 500 weeks."
(3) La.Acts 1975, No. 583, § 9, again did not amend the one eye provision, but did amend the both eyes and permanent total disability provisionsLa.R.S. 23:1221(2) provides: "For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of the injury, was particularly fitted by reason of education, training and experience, sixty-six and two-thirds per centum of wages during the period of such disability." La.R.S. 23:1221(4)(j) provides: "for the loss of ... both eyes, ... shall, in the absence of conclusive proof to the contrary, constitute permanent total disability."