KNOLL, Judge.
The administratrix for the Succession of Elijah Thomas, Jr., appeals the dismissal of her claim for certain accrued worker’s compensation benefits allegedly owed to the deceased by his employer, General Fabrication & Service Company. The trial court ruled that General Fabrication fully compensated the deceased and thus, owed his succession nothing.
*878 The Succession of Elijah Thomas, Jr., relies on two specifications of error: 1) the trial court erred in failing to award plaintiff the amount accrued and payable as a scheduled loss to Elijah Thomas, Jr.; and 2) the trial court erred in allowing General Fabrication to take a “credit” against wrongfully withheld interim payments. We affirm.
FACTS
The issues raised on appeal were thoroughly covered by the learned trial judge in his excellent written reasons for judgment. After carefully reviewing the record, we find the trial court’s determinations and the jurisprudence it relied upon are well supported by the record. Therefore, we adopt the trial court’s reasons for judgment as our opinion which is set forth herein:
“In this matter the deceased was injured about his shoulder and back in an employment-related accident on July 8, 1981. Pursuant to this injury the deceased received worker’s compensation through the defendant’s insurer until sometime in November, 1981, the total payments amounting to $2,771.00. The insurer made medical payments for the deceased in the amount of $5,960.00
In November of 1981, the deceased was released by the treating physician, Dr. Louis Blanda, who also concluded that the injury of the deceased’s shoulder caused a ten (10%) percent permanent partial disability.
The death of the deceased occurred on May 22, 1982, in a separate and unrelated automobile accident.
The Administratrix of the Succession of the deceased brought this action to recover worker’s compensation allegedly due the deceased under the provisions of LSA-R.S. 23:1021, et seq. Upon trial of the merits the primary issue that emerged for court determination was whether the defendant insurer remained responsible for compensation payments to the deceased under the schedule loss provisions (R.S. 23:1221[4]) beyond November of 1981, or whether any such payments due were subject to a credit based upon the temporary total disability payments already made, such that the applicable credit was greater than the amount due the deceased.
No doubt the deceased was injured in a work-related accident on July 8, 1981, and received worker’s compensation in the amount of One Hundred Sixty-three ($163.00) Dollars per week through November 4, 1981, the total thereof coming to $2,771.00. Too, no question appears as to the fact that Dr. Blanda released the deceased in early November, 1981 with a determination of 10% partial permanent disability, regarding his shoulder, and that thereafter the defendant insurer terminated the payments.
The resolution of the issue before the Court lies in an in pari materiae analysis of the provisions of LSA-R.S. 23:1202, 1221 and 1223, and the jurisprudential authorities applicable. Paragraph 4 of Section 1221 of the mentioned title establishes a compensation schedule solely for the anatomical loss of use or amputation of certain bodily members. Since we are concerned with a shoulder in the instant case, the Court turns attention to Sub-paragraph (f) thereof which provides that for the loss of an arm the injured is due to be paid 66%% of his wages during 200 weeks. However, given the fact that the permanent loss was assigned by the physician at ten (10%) per cent, the Court must turn to Subparagraph (o) of the same paragraph and section, which provides in pertinent part that where the permanent anatomical loss is only partial, the compensation must be in proportion based upon the percentage of loss or impairment assigned and the rate payable for the total loss of the member.[1]
*879 Thus, the award in the case before this Court is properly the proportionate disability to the plaintiff's arm (10% permanent impairment of the shoulder), multiplied by 66%% of his wages during 200 weeks. See Deleon v. Home Indemnity Co., 444 So.2d 685 (La.App. 5th Cir.1984). However, the parties stipulated at trial that the calculation would yield the plaintiff less than the statutory minimum and to the fact that the applicable statutory minimum under R.S. 23:1202 is $49.00. The total compensable amount then comes to $9,800.00 during 200 weeks. However, two factors must now be considered by this Court with respect to this compensable amount of $9,800.00. First, the decedent died on May 22, 1982, in an unrelated accident. Calculations reveal then that some 45 weeks transpired between July 8, 1981 and May 22, 1982. Turning to jurisprudential authority then, it is clear that although the right of an employee to enforce the obligation of an employer to pay disability benefits is a heritable property right, this right applies only to accrued benefits, with benefits which would have been paid but for the death not considered accrued. Guillot v. Weave [Weaver] Brothers, 31 So.2d 278 (La.App. 2nd Cir.1947); Turner v. Southern Wheel and Rim Service, Inc., 332 So.2d 770 (La.1976); Chapman v. Home Indemnity Company, 442 So.2d 1388 (La.App. 3rd Cir.1983), writ denied 445 So.2d 437 (La.1984). The same rule applies as to schedule loss disability benefits. Jacks v. Bannister [Banister] Pipe Line America, 418 So.2d 524 (La.1982).
Thus the fact that the decedent lived for only 45 weeks after the accident, coupled with the provisions of R.S. 23:1201(D) which provides that partial total disability payments are due on the thirtieth day after medical notice (including all such compensation then due), leads to a conclusion that the decedent was due compensation for 45 weeks.
The other factor that must be considered involves the trial stipulation that until November 1981 (during the 45 week period) the decedent was paid worker’s compensation benefits totalling $2,771.00 for temporary total disability. R.S. 23:1223 provides that when compensation has been paid under R.S. 23:1221(1), (2) or (3), the amount of such payments shall be deducted from any compensation allowed under R.S. 23:1221(4). It is now clear that this credit is determined on a dollar for dollar basis. See Deleon, supra and Jacks, supra.
Thus, the temporary total disability benefits received by the decedent were terminated on November 4, 1981, after the release by Dr. Blanda with the 10% permanent disability. From this date, then, the decedent was due 200 weeks of compensation at $49.00 per week or such number of weeks as he remained alive. The decedent lived nearly 29 weeks after November 4, which calculated amounts to a due figure of $1,421.00. However, the compensation paid between July 8, and November 4, amounted to $2,771.00. Therefore, considering the right of the defendants to the dollar for dollar credit mentioned above, no compensation is now due the plaintiffs estate.
Too, the claim for penalties and attorney’s fees must fail for there is no compensation due.”
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant, the Succession of Elijah Thomas, Jr.
AFFIRMED.

. Note that this analysis of the law involves the version of R.S. 23:1221 prior to the amendments passed during the 1983 Extraordinary Session of the Legislature. Apparently under the amended statute, the proportion determined by the percentage of loss assigned would affect the number of comparable weeks rather than the rate of compensation. In the case at bar the cause clearly arose under the pre-1983 version of the law.