WATKINS, Judge.
The only issue presented by this appeal is whether the defendant employer was correctly assessed for a penalty and attorney’s fees for its unwarranted discontinuing of worker’s compensation benefits.
The plaintiff, Warren Chexnayder, filed suit against the defendant, Schwegmann Giant Supermarkets, Inc. (Schwegmann) to recover worker’s compensation benefits that had been discontinued. On the eve of the trial, the parties were able to resolve all issues except for the plaintiff’s claim that the insurer acted in an arbitrary and capricious manner in terminating benefits. Counsel for the parties agreed to submit the case on memoranda, and Hearing Officer Robert W. Varnado, Jr. of District “6” of the Office of Worker’s Compensation Administration rendered judgment in claimant’s favor on November 13, 1991.
Hearing Officer Varnado specified that he was adopting as the court’s reasons for judgment the post trial memorandum sub *393 mitted by counsel for the claimant, the pertinent parts of which are as follows:
Claimant sustained an accident in the course and scope of his employment on or about June 7, 1988 while unloading trucks for his employer. The claimant had been employed with defendant since August 30, 1987, and was earning $4.45 per hour working seven and one-half hours per day, six days per week. As a result of the accident herein, defendant began paying compensation benefits in the amount of $107.89 per week. As a result of the accident herein, the claimant underwent lumbar disc surgery at the L5-S1 level of his lumbar spine in October of 1988. Initially, the claimant had good relief of leg pain but thereafter had continually worsening low back pain as he attempted to increase his activities. Based on continuing problems, Dr. Brat-ton, the treating neurosurgeon, re-hospitalized the claimant on June 28, 1989 for follow-up myelography. The final discharge diagnosis was that of status post-op lumbar decompression and retrolithe-sis of L5 on SI with mechanical back pain.
On October 16, 1989, [claimant’s counsel] sent a letter of representation to defendant advising that the claimant had hired an attorney to assist him with the further handling of the compensation claim. On November 12, 1989, the claimant’s compensation benefits were discontinued.... [Cjounsel for the claimant sent a letter to the carrier on January 17, 1990 requesting benefits be re-instated and brought up to date (Exhibit “1”). On February 6, 1990, [counsel] sent a follow-up letter to the defendant advising that the claimant was still in active medical treatment and again requesting benefits be reinstated and brought up to date (Exhibit “2”).
The defendant did not respond and on April 9, 1990, [counsel] filed a claim with the Office of Workers’ [sic] Compensation to have claimant’s benefits re-instated.
On May 4, 1990, the defendant started paying compensation benefits on a weekly basis again, and paid benefits that were past due only back to February 6, 1990. Moreover, the past due benefits that were paid from February 6, 1990 through May 4, 1990 were not paid with interest. An informal conference was had in this matter on August 2, 1990, wherein defense counsel agreed to recommend the payment of past due benefits. A pre-trial conference was had in this matter on January 24, 1991 and the matter was scheduled for trial on the merits for March 26, 1991. Subsequent to the pre-trial conference, the defendant tendered a check on February 11, 1991 for the benefits that were past due from when the benefits had been discontinued on November 12, 1989 to February 6, 1990.
The net effect of the foregoing is that by February 11, 1991 the defendant had paid all past due compensation benefits from November 12, 1989 to date. However, the past due benefits were paid after litigation was commenced, and said payments were paid without the payment of interest, penalties and/or attorney’s fees. Subsequent to the payment tendered on February 18, 1991, the parties agreed that the only issues remaining for the Court to resolve were the issues of penalties and attorney’s fees and interest on past due payments.
[[Image here]]

OPERATIVE FACTS:

Defendant’s claims adjuster, Andre J. Roques, Jr., decided on his own, on November 12, 1989, that claimant Warren Chexnayder’s benefits should be discontinued. [Roques deposition cited.] His only basis for this discontinuance was that the claimant had not returned to Dr. Bratton’s office since June of 1989.... Though Dr. Bratton never released the claimant to return to work, Mr. Roques interpreted the doctor’s report, in his own mind, to mean that the claimant could go back and do some kind of work_ Mr. Roques’ sole justification for his action is one phrase in the doctor’s report which states that the claimant “did wish to pursue his education and did not. wish to go back into the physical *394 work force”_ A copy of Dr. Brat-ton's discharge summary referred to by Mr. Roques is attached as Exhibit “3”. It is interesting to note that from the time the claimant was discharged from the hospital in June of 1989 to October 16, 1989, when [counsel] sent a letter of representation to the defendant, that the defendant took no interest in on-going medical care and/or treatment. However, some three weeks after a letter of representation was sent to the defendant, plaintiffs benefits had been discontinued without notice, to the claimant or his counsel based on the claimant’s alleged failure to follow-up with medical treatment.
Mr. Roques never called Dr. Bratton or the claimant for a clarification of the statement. If he had, he would have found out that claimant never told the doctor he didn’t want to go back into the work force, but simply that he would like to go back to school. [Chexnayder deposition cited.]
Moreover, if he had called Dr. Bratton, he would have found out why claimant hadn’t been back to see him. During that visit in June of 1989, Dr. Bratton had told claimant there was nothing else he could do for him. [Chexnayder deposition cited.] Claimant left that visit with the following understanding:
‘It was pointless for him to operate on me now because I was too young and the condition was just going to worsen. He told me my back could heal in two to five years, made no appointments, made no comment that he wanted to see me again.’ [Chex-nayder deposition.]
Moreover, Mr. Roques knew the claimant hadn’t been released from the doctor’s care....
Claimant had no idea why his compensation benefits were discontinued.... Even claimant’s attorney wasn’t able to find out, until Mr. Roques finally sent him a letter on January 26, 1990.... Though he had the opportunity to do so in his October 30, 1989 letter to plaintiff’s counsel, Mr. Roques failed to advise that there was a perceived problem with the compensation benefits or that he wished the claimant to return to the doctor in order to continue to receive benefits.
[[Image here]]
Claimant and his attorney were able to satisfy the demands of Mr. Roques on February 6, 1990, after Mr. Roques finally made- them clear in a letter dated January 26, 1990.... In that January 26th letter, Mr. Roques stated:
‘It is my understanding that your client is capable of gainful employment at this time and, therefore, the reason that worker’s compensation benefits have been suspended.
‘If and until such time that there is medical in the files suggesting that your client has some type of ongoing disability which precludes his being able to return to work, I would be happy to reconsider my position.’ [Ro-ques deposition.]
Yet, even though Mr. Roques received a February 6, 1990 reply letter from claimant’s counsel timely, a letter which stated that claimant had been back to the doctor and physical therapy had been resumed, Mr. Roques did not initiate benefits again until May 4, 1990.... And then, he made these benefits retroactive to only February 6, 1990, the date of plaintiff’s counsel’s letter to him. Furthermore, that payment did not include any interest for the delay in payment and, as well, did not compensate the claimant for the period of November 12, 1989 to February 6, 1990....
Upon further questioning from claimant’s attorney concerning the non-payment of any benefits from November 12, 1989 to February of 1990, Mr. Roques stated that the only reason he did not give claimant benefits for that time was that one phrase again that said claimant had “no desire to re-enter the work force”.... A check for those benefits was finally tendered on February 11, 1991 to defendant’s attorney, but again it was without any interest.
[[Image here]]

*395
ARGUMENT:

Claimant contends that the discontinuance of benefits was arbitrary, capricious, and without probable cause and, therefore, claimant contends he is entitled to penalties, attorney’s fees and interest on past due benefits.
Louisiana Revised Statute 23:1201.2 provides that:
‘Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney’s fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney’s fees shall not apply to cases where the employer or insurer is found liable for attorney’s fees under this Section.’
Louisiana Revised Statute 23:1201(E) states:
‘If any installment of compensation payable without an order is not paid within the time period ... there shall be added to such unpaid installment of a penalty of an amount to equal to 12% thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such non-payment results from conditions over which the employer or insurer had no control. Whenever the employee’s right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The 12% additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay.’
... [W]hen the report of Dr. Bratton is reviewed objectively, ... the defendant’s decision to discontinue benefits on February 12,- 1989 was arbitrary, capricious and/or without a reasonable basis. Dr. Bratton had not, and to this day has not, released the claimant to return to gainful employment. The defendant never received any communication orally and/or in writing from Dr. Bratton authorizing the claimant's return to work.... [T]he defendant ... stopped payments three weeks after a letter of representation was sent to them. Thereafter, when it was perfectly clear that active medical treatment was on-going based on Dr. Bratton’s resumption of physical therapy for the claimant in February of 1990, benefits were still not paid. Finally, in May of 1990, benefits were tendered but only retroactive to the date physical therapy had started on February 6, 1990. Again, the benefits tendered were without interest. Defendant did not have any information to indicate that the claimant was capable of employment from November 12, 1989 to February 6, 1990, but still did not pay benefits.... Finally, after a claim had been filed and an informal conference had been had and a final pre-trial conference had been had, the defendant tendered the remaining past due benefits on February 11, 1991_ Notwithstanding same, defendant did not tender interest on those past due benefits....
Defendant would have the Court believe that they had no knowledge of the claimant’s on-going disability after June of 1989 and, therefore, were proper in withholding compensation payments. That argument simply does not withstand scrutiny in light of the fact that they never attempted to contact Dr. Bratton’s office, the claimant or the ... counsel for the claimant to elicit further information on either the claimant’s ability to work or his need to follow up with further medical care. What they did know was that the claimant had undergone major back surgery and continued to have significant problems to the extent that he was required to be re-hospitalized for further myelography....
The jurisprudence is replete with similar eases wherein penalties and attorney's fees were awarded:
The Louisiana Supreme Court, in Bordelon v. Vulcan Materials Company, 472 So.2d 5 (La., 1985) found the defen *396 dants liable for penalties and attorney’s fees for failing to pay compensation timely on two separate occasions, and then found it liable for legal interest on each weekly installment from its due date until paid. Id., 472 So.2d at 10.
[[Image here]]
In Collins v. McDonald[]s Corp., 411 So.2d 611 (La.App. 1st Cir., 1982), the medical reports wére “at best incomplete”_ 411 So.2d at 613. The reports ‘were somewhat ambiguous and neither report indicated that plaintiff was not, in fact, disabled from returning to work.’ Id. Thus, the Court found the insurer’s actions in terminating benefits to be arbitrary, capricious and unreasonable behavior. Id.
[[Image here]]
CONCLUSION
This claim should never have reached this stage of the proceedings. As early as February of 1990, [claimant’s counsel] provided the defendants with information from Dr. Bratton’s office that the claimant was in active medical treatment and had resumed physical therapy for continuing complaints of pain. Nonetheless, the defendants caused the parties to go through an informal conference in Frank-linton, Louisiana, a final pre-trial conference and preparations for a trial on the merits. Additionally, the defendants propounded Interrogatories and several depositions were taken in this claim.... The defendant’s letter to Dr. Bratton, dated April 16, 1991, speaks volumes about this case. Some sixteen months after benefits were discontinued the defendants ... decided to ask the claimant’s treating physician whether or not he was disabled during the time they had discontinued benefits. The philosophical underpinning of the penalty provisions of the compensation act make it clear that we look to what information and what action the defendant took at the time benefits were discontinued, as opposed to what action they take later on on the eve of trial in an effort to justify what they did. There is and was no reasonable justification for the discontinuance of benefits, or the failure to pay same, once legal demand was made on defendant.
Pursuant to the adopted reasons, Hearing Officer Varnado rendered judgment against the defendants for attorney’s fees in the amount of $4,000.00 and a penalty of twelve percent of all past due benefits, together with legal interest from date of demand[2] and for all costs.
On appeal Schwegmann does not dispute the facts as stated in the adopted memorandum. Instead, defendant argues that the claimant's statement to the physician about returning to school, coupled with the fact that the claimant did not see his treating physician for four and a half months, justified Schwegmann’s discontinuing benefits. Therefore, according to the defendant, the judge erred in finding it was arbitrary and capricious. We disagree. The judgment herein is supported by the depositions and documents in the record, is consistent with the statutes and jurisprudence, and is not manifestly erroneous.
Following the appeal taken by the defendant, claimant filed a “cross appeal” to request additional attorney’s fees for the appeal. Because the appeal required additional effort on the part of counsel for claimant, we award an additional $2,000.00 in attorney’s fees. We also cast appellant with all costs of the appeal.
AMENDED, AND AFFIRMED AS AMENDED.

. Appellee has not complained of the trial court’s action in awarding interest from date of demand instead of the date each compensation payment was due. Accordingly, that issue is not before us, and we are without authority to change the judgment. See Bordelon v. Vulcan Materials Company, supra.